Docket No. 102096.

IN THE

SUPREME COURT

OF

THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
CHARLES JOHNSON, Appellee.

*Opinion filed May 24, 2007.*

JUSTICE FITZGERALD delivered the judgment of the court,
with opinion.

Chief Justice Thomas and Justices Garman and Karmeier
concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justices Freeman
and Kilbride.

## OPINION

The central issue in this case is whether the Sex Offender
Registration Act (730 ILCS 150/1 *et seq.* (West 2000)) violates due
process because it required the defendant, Charles Johnson, to register
as a sex offender after he was convicted, in the circuit court of Cook
County, of aggravated kidnapping of a minor. See 720 ILCS 5/10–2
(West 2000). The State appeals the decision of the appellate court that
the Act was unconstitutional as applied to the defendant. 363 Ill. App.
3d 356. For the reasons that follow, we reverse and remand.

## BACKGROUND

In 1986, the General Assembly enacted the Habitual Child Sex
Offender Registration Act, which required persons convicted of sex

offenses against children to register with local law enforcement. Ill. Rev. Stat. 1987, ch. 38, par. 221 *et seq.* In 1996, the statute was renamed the Sex Offender Registration Act and expanded to include certain sex offenses against adults, as well as nonsexual offenses against children. See 730 ILCS 150/1 *et seq.* (West 1996). Section 2(A)(1)(a) of the Act defined "sex offender" as a person charged with and convicted of an enumerated sex offense. 730 ILCS 150/2(A)(1)(a) (West 2002). Section 2(B)(1.5) of the Act included, in its definition of "sex offense," aggravated kidnapping "when the victim is a person under 18 years of age, the defendant is not a parent of the victim, and the offense was committed on or after January 1, 1996." 730 ILCS 150/2(B)(1.5) (West 2002). A person convicted of a sex offense must register as a sex offender with local law enforcement. See 730 ILCS 150/3 (West 2002).

On October 23, 1999, the defendant and four accomplices kidnapped Elmora Kimbrough and her 20-month-old granddaughter and demanded a ransom from Kimbrough's son. Two of the accomplices were arrested when they attempted to collect the ransom, and they led the police to a van where the victims and the defendant were found. The defendant was arrested and later indicted on one count of armed robbery, one count of armed violence, one count of possession of a stolen motor vehicle, one count of aggravated battery, nine counts of aggravated kidnapping, and three counts of unlawful use of a weapon.

On December 14, 2001, the defendant entered open guilty pleas to the armed robbery of Kimbrough and the aggravated kidnapping of her granddaughter, and the State dismissed the remaining counts against him. The trial court found a factual basis for the guilty pleas, and the defendant became subject to the registration requirements of the Act as a person charged with and convicted of aggravated kidnapping of a minor by a nonparent. At the sentencing hearing, the trial court reviewed the facts of this case and noted that Kimbrough had been undressed and bound during the kidnapping in order to control her, but that there were no sexual assault allegations. On January 29, 2002, the defendant was sentenced to concurrent terms of 17 years' imprisonment for each offense. He appealed.

The appellate court determined that the defendant received negotiated plea admonishments under Supreme Court Rule 605(c),

rather than open plea admonishments under Rule 605(b) (see 210 Ill. 2d R. 605(b)), and remanded for compliance with that rule. *People v. Johnson*, No. 1–02–2531 (2003) (unpublished order under Supreme Court Rule 23). On remand, the trial court admonished the defendant in accordance with Rule 605(b) and denied the defendant's *pro se* "motion to correct a void sentence" and "motion requesting reconsideration and reduction of sentence." In its ruling the court repeated that there were no sexual assault allegations: Kimbrough "was held, and at one time all her clothes were taken off \*\*\*, I guess as part of controlling her they made her take all her clothes off." The defendant appealed, raising for the first time the constitutionality of the Act.

The appellate court determined that defense counsel failed to file a certificate under Supreme Court Rule 604(d) (see 210 Ill. 2d R. 604(d)), and again remanded for compliance with that rule. 363 Ill. App. 3d at 360. The appellate court further held that the Act, as applied to the defendant, violated the due process clauses of the federal and state constitutions. 363 Ill. App. 3d at 363-64. The appellate court found, "The record indicates that defendant's offense of aggravated kidnaping was not sexually motivated." 363 Ill. App. 3d at 363. Consequently, concluded the court, there was no rational relationship between the defendant's designation as a sex offender and the state's interest in protecting the public. 363 Ill. App. 3d at 363.

Justice Wolfson concurred with the majority's decision to remand the cause for a Rule 604(d) certificate, but he dissented on the constitutional issue. 363 Ill. App. 3d at 364 (Wolfson, J., specially concurring in part and dissenting in part). According to Justice Wolfson,

> "It is the nature of the crime–kidnaping a child–that triggers the Registration Act provisions. \*\*\*
>
> \*\*\* Once an offender makes the decision to commit the aggravated kidnaping of a child, there is a very real possibility the child will become a victim of sexual abuse. Our Reports are filled with such cases.
>
> In this case the crime was interrupted while it was in progress. The child was being held in a stolen van when the police arrived. The legislature has the authority to protect

children from such an offender. Requiring him to register his name and address with law enforcement officials does not offend due process of law." 363 Ill. App. 3d at 364-65 (Wolfson, J., specially concurring in part and dissenting in part).

## ANALYSIS

After we allowed the State's petition for leave to appeal, Public Act 94–945 was adopted. Effective June 27, 2006, Public Act 94–945 amended section 2(B)(1.5) and redefined the term "sex offense" under the Act. Section 2(B)(1.5) of the Act now includes, in its definition of sex offense, aggravated kidnapping "when the victim is a person under 18 years of age, the defendant is not a parent of the victim, *the offense was sexually motivated as defined in Section 10 of the Sex Offender Management Board Act*, and the offense was committed on or after January 1, 1996." (Emphasis added.) Pub. Act 94–945, §1025, eff. June 27, 2006 (amending 730 ILCS 150/2(B)(1.5)).

Public Act 94–945 also contained the Child Murderer and Violent Offender Against Youth Registration Act. See Pub. Act 94–945, eff. June 27, 2006 (adding 730 ILCS 154/1 *et seq*.). A person convicted of, *inter alia*, aggravated kidnapping of a minor by a nonparent must now register under the Sex Offender Registration Act when the offense is sexually motivated, and under the Violent Offender Against Youth Registration Act when it is not. Section 11 of this Act provides for transfers from one registry to the other:

> "(a) The registration information for a person registered under the Sex Offender Registration Act who was convicted or adjudicated for an offense listed in subsection (b) of Section 5 of this Act may only be transferred to the Child Murderer and Violent Offender Against Youth Registry if all the following conditions are met:
>
> (1) The offender's sole offense requiring registration was a conviction or adjudication for an offense or offenses listed in subsection (b) of Section 5 of this Act.
>
> (2) The State's Attorney's Office in the county in which the offender was convicted has verified, on a form prescribed by the Illinois State Police, that the person's

-4-

crime that required or requires registration was not sexually motivated as defined in Section 10 of the Sex Offender Management Board Act.

(3) The completed form has been received by the registering law enforcement agency and the Illinois State Police's Sex Offender Registration Unit." Pub. Act 94–945, eff. June 27, 2006 (adding 730 ILCS 154/11(a)).

Though we have held that the Sex Offender Registration Act applies retroactively (see *People v. Malchow*, 193 Ill. 2d 413, 418 (2000)), we have not held that the amendments to that statute in Public Act 94–945 do so. Generally, a statutory amendment cannot be given retroactive effect absent a clear expression of legislative intent. See *In re Detention of Lieberman*, 201 Ill. 2d 300, 321 n.3 (2002); see also *People v. Atkins*, 217 Ill. 2d 66, 71 (2005) (intimating that a statutory amendment may be applied retroactively where the legislature so intends). Here, amended section 2(B)(1.5), like original section 2(B)(1.5), applies to persons convicted of aggravated kidnapping of a minor after January 1, 1996. This obviously includes the defendant. Under the original statute, aggravated kidnapping of a minor was defined as a sex offense, regardless of its motivation. As Justice Wolfson noted in his dissent, the nature of the crime itself triggered the registration requirement. See 363 Ill. App. 3d at 364 (Wolfson, J., specially concurring in part and dissenting in part). Under the amended statute, this offense is defined as a sex offense only if it is sexually motivated. Now, the nature of the crime coupled with its impetus triggers the registration requirement.

Generally, "where a challenged statute is amended while the cause is pending, the question of the statute's validity becomes moot, thus rendering unnecessary its review by the court." *People v. B.D.A.*, 102 Ill. 2d 229, 233 (1984). Concluding that amended section 2(B)(1.5) applies retroactively, however, does not take the defendant off the sex offender registry. Indeed, the parties agree on retroactivity, but they vigorously contest the constitutionality of original section 2(B)(1.5). Though Representative Fritchey, one of the House sponsors of Public Act 94–945, asserted that the statute "simply shifts" a person from the sex offender registry to the violent offender against youth registry if the offense was not sexually motivated (see 94th Ill. Gen. Assem., House Proceedings, February 22, 2006, at 13 (statements of

Representative Fritchey)), the Act is not self-executing. It does not provide for a fresh judicial determination of whether an offense that placed a person on the sex offender registry before June 27, 2006, was sexually motivated.[1] The defendant's only recourse is the transfer provision of section 11 of the Violent Offender Against Youth Registration Act. The mechanics of this provision are, at best, ill-defined.

Unlike the Sexually Dangerous Persons Act (see 725 ILCS 205/9 (West 2004)) and the Sexually Violent Persons Commitment Act (see 725 ILCS 207/65 (West 2004)), which expressly allow committed persons to file discharge petitions, section 11 does not provide that a registered person may file a transfer petition. Additionally, section 11 does not instruct the trial court to decide whether the offense was sexually motivated. The statute leaves that decision solely to the discretion of the State's Attorney: a transfer is conditioned, in part, on whether the State's Attorney in the county where the person was convicted has verified that there are no facts underlying the offense indicating sexual conduct or an intent to engage in such conduct. Pub. Act 94–945, eff. June 27, 2006 (adding 730 ILCS 154/11), citing 20

---

[1]Contrary to the State's suggestion in its reply brief, section 86 of the Violent Offender Against Youth Registration Act provides no relief to the defendant. Section 86 states, "Any person who is convicted of any of the offenses listed in subsection (b) of Section 5 of this Act on or after [June 27, 2006], shall be required to register as an offender on the Child Murderer and Violent Offender Against Youth Registry if, at the time of sentencing, the sentencing court verifies in writing that the offense was not sexually motivated ***." Pub. Act 94–945, eff. June 27, 2006 (adding 730 ILCS 154/86). The defendant was sentenced on January 29, 2002, more than four years before Public Act 94–945 became effective. At that time the trial court did not verify in writing or otherwise that the offense against Kimbrough's granddaughter was not sexually motivated.

The State's position at oral arguments that this cause is "going back for resentencing" is incorrect. This cause is being remanded only for a Rule 604(d) certificate, not for resentencing. Because his sentence has been entered, the defendant remains convicted (see *People v. Woods*, 193 Ill. 2d 483, 487 (2000), citing *People v. Robinson*, 89 Ill. 2d 469 (1982)), and thus outside section 86. If, in the future, the defendant's present sentence is vacated, and he is truly subject to resentencing, then section 86 would apply.

ILCS 4026/10 (West 2004). Section 11 further does not contemplate judicial review of a decision by the State's Attorney that the offense was sexually motivated, and consequently that the person is ineligible for a transfer. The case before us exemplifies the problem with the statutory scheme.

When the defendant was convicted, section 2(B)(1.5)'s definition of sex offense did not hinge on motivation, and the trial court understandably made no express finding in that regard. The trial court twice referred to the fact that Kimbrough had been undressed before she was bound. At the defendant's first sentencing hearing, the court observed that there were no sexual assault allegations accompanying this conduct. Later, on remand at a hearing for Rule 605(c) admonishments, the trial court guessed that this conduct was a means to control Kimbrough. The gratuitous and equivocal nature of the trial court's comments on this issue undermine the appellate court's confident announcement that the record indicates the defendant's offense was not sexually motivated. See 363 Ill. App. 3d at 363. More importantly, the trial court's comments concerned the defendant's conduct toward Kimbrough, not his conduct toward her granddaughter. It remains inappropriate for a reviewing court to make fact determinations, and it is particularly inappropriate on this record. We vacate the appellate court's conclusion on this issue.

Before us, the State still insists that the defendant's conduct was sexually motivated. In its opening brief the State asserts that the statutory definition of sexually motivated "is a very low threshold." The State continues:

> "The removal of all of a victim's clothing is not inherently part of the detention or captivity of kidnaping victims, nor is it related to effectuating a ransom. It is, however, circumstantial evidence of an intent to commit a sexual assault. [Citations.]
>
> Here, the notion that five adult males had to remove all of the clothes of the 60 year old woman as a measure of control during the kidnaping of her and her young granddaughter ignores the fact that she was both bound and isolated in a vehicle the offenders chose for the very purpose of the captivity and further ignores that the ransom attempt was interrupted by the police rescue. Stripping a victim naked is not an inherent part of the captivity or concealment of

kidnaping; it may not reach the level of a chargeable sex offense but *it demonstrates an intent towards sexual assault which certainly exposed the child to sexual exploitation.*

\*\*\* Given the totality of the circumstances, and the low threshold necessary to trigger the [Act], *this case demonstrates a sexual intent sufficient to show that the child was at high risk of sexual exploitation.*" (Emphases added.)

The message is unmistakable to the defendant. In his response brief the defendant correctly acknowledges that "transfer to the new registry is not automatic" because section 11 allows a transfer only after the State's Attorney has verified the offense was not sexually motivated. Thus, the defendant states, even if this court were to remand this cause to the trial court for transfer proceedings–proceedings for which section 11 does not specifically provide–"the State has made it emphatically clear that it is unwilling to transfer him to the new \*\*\* registry." Considering the vehemence of the State's argument here, it would be speculative to conclude that on remand the State would simply shift the defendant's registration information from the sex offender registry to the violent offender against youth registry.

We must apply Public Act 94–945 as it is written; we may not rewrite that law to make it consistent with our ideas of orderliness and public policy. See *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 394-95 (1998). Section 11 clearly does not require the State to raise the possibility of a transfer, and it does not require the trial court to raise that possibility *sua sponte*. If it is the defendant's prerogative to advance this argument, the statute provides no means for him to do so. Thus, the defendant remains on the sex offender registry because Public Act 94–945 offers him no way off of it. The constitutionality of original section 2(B)(1.5), under which the defendant was placed on the sex offender registry, is squarely before us. We turn to that statute.

All statutes carry a strong presumption of constitutionality. *People v. Botruff*, 212 Ill. 2d 166, 178 (2004). To overcome this presumption, a party challenging a statute must clearly establish that it violates the constitution. *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005). This court will affirm a statute's constitutionality if the statute is reasonably capable of such an interpretation. See *People v. Einoder*,

209 Ill. 2d 443, 450 (2004). The question of whether a statute is unconstitutional is a question of law, and our review is *de novo*. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000).

"Under substantive due process ***, a statute is unconstitutional if it impermissibly restricts a person's life, liberty or property interest." *People v. R.G.*, 131 Ill. 2d 328, 342 (1989); see also *Reno v. Flores*, 507 U.S. 292, 301-02, 123 L. Ed. 2d 1, 16, 113 S. Ct. 1439, 1447 (1993). Where, as here, the challenged statute does not affect a fundamental right, the so-called rational basis test applies. See *Davis v. Brown*, 221 Ill. 2d 435, 450 (2006).[2] Under the rational basis test, our inquiry is twofold: we must determine whether there is a legitimate state interest behind the legislation, and if so, whether there is a reasonable relationship between that interest and the means the legislature has chosen to pursue it. See *People v. Reed*, 148 Ill. 2d 1, 11 (1992), citing *People v. Lindner*, 127 Ill. 2d 174, 180 (1989); *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323 (1996) (the rational basis test asks "whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal"); *People v. Adams*, 144 Ill. 2d 381, 390 (1991) (the statute must bear "a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective"). The rational basis test is highly deferential; its focus is not on the wisdom of the statute. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 125 (2004). If there is any conceivable set of facts to show a rational basis for the statute, it will be upheld. *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124 (1998); see *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003) ("The judgments made by the legislature in crafting a statute are not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data").

The purpose of the Act is to aid law enforcement by facilitating ready access to information about sex offenders and, therefore, to protect the public. See *People v. Cornelius*, 213 Ill. 2d 178, 205 (2004) ("the primary purpose of the Registration Act *** is to assist

---

[2]The defendant does not contend that the Act affects a fundamental right, and we have not held otherwise. See *In re J.W.*, 204 Ill. 2d 50, 67 (2003).

law enforcement and to protect the public"); *Adams*, 144 Ill. 2d at 390 ("the public interest to be served by the Registration Act is the assistance to law enforcement in the protection of children"); *People v. Marsh*, 329 Ill. App. 3d 639, 644 (2002).[3] This is obviously a legitimate state interest. See *People v. Huddleston*, 212 Ill. 2d 107, 133 (2004). Our focus shifts to the nexus between this interest and the statute, as applied to the defendant. That is, we ask whether it was reasonable to require the defendant, a nonparent convicted of aggravated kidnapping of a minor, to register under the Act, regardless of whether this offense was sexually motivated.

The State argues that the legislature had a rational basis to label aggravated kidnapping of a minor by a nonparent a sex offense and, consequently, the defendant a sex offender. The State contends that, in adding abduction offenses as triggers for the Act's registration requirements, the legislature apparently found a link between these offenses and sex offenses against children. The defendant argues that it is not fair for the State to label the aggravated kidnapping of Kimbrough's granddaughter a sex offense, and consequently require him to register under the Act, when his conduct was not sexually motivated. According to the defendant, falsely labeling him as a sex offender is arbitrary and unreasonable; it does not further the Act's purpose of aiding law enforcement and thereby protecting children.

The appellate court here agreed with the defendant, relying on cases from Florida, New York, and Ohio. See 363 Ill. App. 3d at 364 (citing *Robinson*, 873 So. 2d 1205, *People v. Wing Dong Moi*, 3 Misc. 3d 1012(A), 2005 NY Slip Op 51068(U) (Westchester County Ct.), and *State v. Reine*, 2003-Ohio-50); see also *American Civil Liberties Union of New Mexico v. City of Albuquerque*, 2006-

---

[3]The State argues that the appellate court misunderstood the purpose of the Act. The appellate court initially stated that the purpose of the Act is "providing the public with information regarding the whereabouts of convicted sex offenders" (363 Ill. App. 3d at 363), but later mentioned "the State's interest in protecting the public from convicted sex offenders" (363 Ill. App. 3d at 364). Here, the defendant challenges the Sex Offender Registration Act, not the Sex Offender and Child Murderer Community Notification Law (see 730 ILCS 152/101 *et seq.* (West 2004)), and the appellate court's latter statement is correct.

NMCA-78, 137 P.3d 1215. The appellate court distinguished *People v. Fuller*, 324 Ill. App. 3d 728 (2001), the first Illinois case to handle this issue, because the facts in that case purportedly indicated that the offense was sexually motivated. 363 Ill. App. 3d at 363.

In *Fuller*, the defendant stole a van in which two children were waiting for their father to return from a nearby store. The defendant drove the van for 20 minutes. He talked with, but never touched, the children. While the van was stopped at a traffic light, the children escaped, and the defendant made no attempt to recapture them. Several hours later, the defendant was arrested. When the police asked him what he planned to do with the children, the defendant stated that he intended " 'to find a hotel room and ask the girl if she had any friends.' " *Fuller*, 324 Ill. App. 3d at 733. The defendant was convicted of aggravated kidnapping, sentenced to six years' imprisonment, and required to register under the Act. He appealed.

The appellate court affirmed, rejecting the defendant's due process challenge to the Act. *Fuller*, 324 Ill. App. 3d at 734. "In essence," noted the court, the defendant "argues nothing more than it is unfair for him to suffer the stigmatization of being labeled a sex offender when his crime was not sexually motivated." *Fuller*, 324 Ill. App. 3d at 733. The court continued:

> "While the term 'sex offender' may carry a stigma, there is little doubt that the offense of kidnaping a person under 18 is intended to trigger the Registration Act. [Citation.] *** It is particularly disingenuous for the defendant to argue that there is no rational relationship between the kidnaping of a child and the purpose of protecting children from the increasing incidence of sexual assault and sexual abuse. The most obvious connection between the offenses listed in section 2(B)(1.5) and the purpose of the Registration Act is that kidnaping or unlawful restraint of a minor is often a precursor offense to juvenile pimping or exploitation of a child, which are, indisputably, within the purview of the Registration Act's purpose." *Fuller*, 324 Ill. App. 3d at 733.

As Justice Wolfson stated in his partial dissent, *Fuller* was not "locked into its specific facts." 363 Ill. App. 3d at 364 (Wolfson, J., specially concurring in part and dissenting in part). Instead, the holding in that case was based upon "the logical nexus between the act

of kidnaping a child and the very real possibility of subsequent sexual exploitation of that child." *Fuller*, 324 Ill. App. 3d at 734. Since *Fuller* was decided, three Illinois cases have tracked its reasoning and expressly rejected that of the appellate court here. See *People v. Doll*, 371 Ill. App. 3d 1131, 1143 (2007) ("the General Assembly had a rational basis to apply the Registration Act to those convicted of the unlawful restraint of children, because those defendants have a greater propensity to harm a child"); *People v. Beard*, 366 Ill. App. 3d 197, 203 (2006) ("The General Assembly had a rational basis to apply the registration and notification requirements based on its view that kidnappers of children, or those convicted of the unlawful restraint of children, or those who attempt those offenses, may have a propensity to commit sexual crimes against children"); *In re Phillip C.*, 364 Ill. App. 3d 822, 831 (2006) ("the legislature could rationally conclude that kidnappers of children pose such a threat to sexually assault those children as to warrant their inclusion in the sex offender registry"); see also *People v. Woodard*, 367 Ill. App. 3d 304, 322 (2006) ("We are aware of no authority that would invalidate or call into question the relevant definition of 'sex offense' as the first degree murder of a person under 18, either on its face or as applied").

*Fuller*, *Beard*, *Phillip C.*, and *Doll* are consistent with cases from other states holding that similar registration statutes pass constitutional muster. See, *e.g.*, *Gunderson v. Hvass*, 339 F.3d 639 (8th Cir. 2003); *In re T.T.*, 188 N.J. 321, 907 A.2d 416 (2006); *State v. Sakobie*, 165 N.C. App. 447, 598 S.E.2d 615 (2004); *State v. Brown*, 273 Wis. 2d 785, 680 N.W.2d 833 (App. 2004) (table). We find *People v. Cintron*, 2006 NY Slip Op 26301 (Sup. Ct., Bronx County), a recent lower court opinion from New York, particularly well reasoned. *Cintron* involved five unrelated cases in which defendants were convicted of either kidnapping or unlawful imprisonment and required to register under that state's sex offender registration act, though no sexual conduct was alleged. The defendants all claimed the registration act violated due process.

The court first reviewed the so-called Jacob Wetterling Act (JWA) (42 U.S.C. §14071 (1994)), which originally required states to create sex offender and crimes against children registries, and later required states to create community notification systems. *Cintron*, 2006 NY Slip Op 26301, *3-4. This statute defined " '[C]riminal offense against

a victim who is a minor' " as any offense comparable to kidnapping or false imprisonment by a nonparent. *Cintron*, 2006 NY Slip Op 26301, *3, quoting 42 U.S.C. §§14071(a)(3)(A)(i), (a)(3)(A)(ii) (1994). Congress tied federal funding to compliance with these requirements. *Cintron*, 2006 NY Slip Op 26301, *3. The "JWA and the federal guidelines adopted pursuant to [the] JWA thus mandate that kidnapping and unlawful imprisonment of a minor by a nonparent be included in any state registration program." *Cintron*, 2006 NY Slip Op 26301, *4.

The court stated that New York enacted its registration act to comply with federal law, as well as to assist local law enforcement efforts to protect the public. *Cintron*, 2006 NY Slip Op 26301, *4. That act provided that kidnapping and unlawful imprisonment of a minor by a nonparent were sex offenses, but, as the court noted, "Sexual contact or motivation is not an element of these crimes." *Cintron*, 2006 NY Slip Op 26301, *4. The court further noted that there is no New York appellate court authority addressing the constitutionality of the registration act in this context. *Cintron*, 2006 NY Slip Op 26301, *5. The court, however, rejected the decisions of two lower court cases, which held that these provisions of the registration act violated due process. *Cintron*, 2006 NY Slip Op 26301, *5-7 (discussing *People v. Bell*, 3 Misc. 3d 773, 778 N.Y.S.2d 837 (Sup. Ct., Bronx County), and *Wing Dong Moi*, 3 Misc. 3d 1012(A), 2005 NY Slip Op 51068(U)). According to the court, neither case considered the "JWA's provision that any state program must include kidnapping and unlawful imprisonment of a minor by a nonparent within the sex offenses subject to registration and notification." *Cintron*, 2006 NY Slip Op 26301, *7.

After reviewing the rational basis test, the court concluded that the registration act did not violate due process: "If Congress had a reasonable basis for requiring child abductors to register as sex offenders, it necessarily follows that legislation intended to bring New York into compliance with [the] JWA shares that basis." *Cintron*, 2006 NY Slip Op 26301, *12. The court stated, "The legislative history of [the] JWA reflects that Congress intentionally included kidnapping and unlawful imprisonment of a minor in the crimes subject to registration requirements and was well aware of the connection between child abduction and the risk of sexual abuse."

-13-

*Cintron*, 2006 NY Slip Op 26301, *10. The court observed that Senator Durenberger, evidently relying on a 1990 Department of Justice study, reported that two-thirds of nonfamily abductions involve sexual assault. *Cintron*, 2006 NY Slip Op 26301, *10, citing 139 Cong. Rec. S6840–02, 86864 (May 28, 1993).

The court further stated that other courts have recognized the link between kidnapping and unlawful imprisonment, and the risk of sexual assault. *Cintron*, 2006 NY Slip Op 26301, *11-12, citing, *inter alia*, *Fuller*, 324 Ill. App. 3d 728. If the legislature may impose enhanced criminal sanctions on defendants who create a risk of violence–as it does with enhanced sentences for offenses committed with firearms–it certainly may impose noncriminal registration requirements on defendants who create a risk of sexual assault. *Cintron*, 2006 NY Slip Op 26301, *14-15. The court summarized: "[I]t is for the Legislature, not the judiciary, to determine whether making kidnapping and unlawful imprisonment of a minor subject to [the registration act] serves the public interest." *Cintron*, 2006 NY Slip Op 26301, *15.

Though the legislative debates surrounding Public Act 89–8, which added aggravated kidnapping to the Act's definition of sex offense, did not mention the JWA or the 1990 Department of Justice study finding a clear connection between nonfamily abductions and sexual assault, the State asserts in its brief that the JWA "includes nonparental kidnaping crimes against children as requiring registration and established guidelines for states to adopt sexual offender registration and notification laws." The State also directs us to a 2002 Department of Justice study, finding that nearly half of all nonfamily abductions involve sexual assault. See D. Finkelhor, H. Hammer & A. Sedlak, *Nonfamily Abducted Children: National Estimates and Characteristics*, National Incidence Studies of Missing, Abducted, Runaway, and Thrownaway Children, at 10 (U.S. Department of Justice, October 2002); see also D. Finkelhor & R. Ormrod, *Kidnaping of Juveniles: Patterns from NIBRS*, Office of Juvenile Justice and Delinquency Prevention, Juvenile Justice Bulletin, at 4 (U.S. Department of Justice, June 2000) ("nonfamily kidnaping is generally associated with other offenses, such as robbery or sexual assault, and is in fact a means of facilitating those offenses").

Our General Assembly, like New York's legislature, recognized that aggravated kidnapping can be a precursor to sex offenses against

children. The General Assembly then chose to include aggravated kidnapping of a minor by a nonparent in the Act's definition of sex offense and, consequently, to impose a registration requirement under the Act on persons convicted of such an offense, regardless of whether their conduct was sexually motivated. We will not question the wisdom of this choice. To satisfy the rational basis test, a statute need not be the best method of accomplishing a legislative goal; it must simply be reasonable. Here, the legislature had a rational basis for enacting original section 2(B)(1.5), and that statute is not unconstitutional as applied to the defendant.

## CONCLUSION

For the reasons that we have stated, the judgment of the appellate court is reversed and this cause is remanded to the trial court.

*Reversed;*
*cause remanded.*

JUSTICE BURKE, dissenting:

The court today devotes its opinion to addressing the constitutionality of a statute that no longer exists. This is serious error. Accordingly, I respectfully dissent.

After pleading guilty, defendant, Charles Johnson, was convicted of the armed robbery of 60-year-old Elmora Kimbrough and the aggravated kidnapping of her 20-month-old granddaughter. Defendant was sentenced to concurrent terms of 17 years' imprisonment.

At the time of defendant's convictions, aggravated kidnapping of a minor by a person who was not the minor's parent was defined as a "sex offense" under section 2(B)(1.5) of the Sex Offender Registration Act (730 ILCS 150/2(B)(1.5) (West 2000)). Section 2(B)(1.5) provided:

"(B) As used in this Section, 'sex offense' means:
\*\*\*

(1.5) A felony violation of any of the following Sections of the Criminal Code of 1961, when the victim is a person under 18 years of age, the defendant is not a

-15-

parent of the victim, and the offense was committed on or after January 1, 1996:

\*\*\*

10–2 (aggravated kidnapping)[.]

\* \* \*

An attempt to commit any of these offenses." 730 ILCS 150/2(B)(1.5) (West 2000).

Thus, in addition to the sentences of imprisonment imposed for the criminal offenses, defendant was also required to register as a sex offender.

On appeal, defendant contended that the definition of a sex offense under section 2(B)(1.5) was unconstitutional as applied in this case because the aggravated kidnapping of the granddaughter was not sexually motivated. Defendant maintained there was no evidence of any sexual conduct toward the granddaughter and no indication of any sexual intent. According to defendant, the kidnapping was undertaken solely with a financial motivation, *i.e.*, to collect a ransom. Thus, because the crime was not sexually motivated, defendant contended it was a violation of due process to classify him as a sex offender.

Addressing defendant's constitutional challenge to the definition of a sex offense as applied in this case, the appellate court first determined that the aggravated kidnapping of the granddaughter was "not sexually motivated and had no sexual purpose." 363 Ill. App. 3d 356, 363.

The court then held that, because defendant's crime was not sexually motivated, defining that crime as a sex offense bore no rational relationship to the state's interest in protecting the public from sex offenders. 363 Ill. App. 3d at 363-64. Thus, the court concluded that section 2(B)(1.5) of the Sex Offender Registration Act was unconstitutional as applied to defendant.

Shortly after the appellate court filed its decision in this case, the General Assembly enacted Public Act 94–945. Effective June 27, 2006, Public Act 94–945 made two significant changes to the registration laws that are relevant to this appeal. First, Public Act 94–945 amended section 2(B)(1.5) of the Sex Offender Registration Act. As amended, section 2(B)(1.5) now defines aggravated

-16-

kidnapping of a minor as a "sex offense" only if the offense was sexually motivated. Section 2(B)(1.5) currently provides:

"(B) As used in this Article, 'sex offense' means:

\*\*\*

(1.5) A violation of any of the following Sections of the Criminal Code of 1961, when the victim is a person under 18 years of age, the defendant is not a parent of the victim, *the offense was sexually motivated as defined in Section 10 of the Sex Offender Management Board Act*, and the offense was committed on or after January 1, 1996:

\*\*\*

10–2 (aggravated kidnapping)[.]"

(Emphasis added.) Pub. Act 94–945, §1025, eff. June 27, 2006 (amending 730 ILCS 150/2(B)(1.5)).

The second significant change made by Public Act 94–945 was the enactment of the Child Murderer and Violent Offender Against Youth Registration Act (Violent Offender Registration Act) (Pub. Act 94–945, eff. June 27, 2006 (adding 730 ILCS 154/1 *et seq.*)). The Violent Offender Registration Act creates a new registry for offenders who commit certain violent crimes, including aggravated kidnapping of a child by a nonparent, when those crimes are committed without sexual motivation. Under this new statute, a nonparent who commits aggravated kidnapping of a child without sexual motivation will be required to register as a violent offender. He will not, however, be a registered sex offender. Moreover, section 11 of the Violent Offender Registration Act authorizes the transfer of the registration information of a person convicted of aggravated kidnapping from the sex offender registry to the violent offender registry, if the crime was not sexually motivated. See Pub. Act 94–945, eff. June 27, 2006 (adding 730 ILCS 154/11).

In light of the changes made to section 2(B)(1.5) of the Sex Offender Registration Act by Public Act 94–945, defendant's challenge to the preamended version of that statute is moot. The rule is well settled. It is a basic tenet of justiciability that reviewing courts will not decide moot or abstract questions or render advisory opinions. *People ex rel. Sklodowski v. State of Illinois*, 162 Ill. 2d

117, 130 (1994), quoting *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990). An appeal is considered moot where it presents no actual controversy or where the issues involved in the trial court no longer exist because intervening events have rendered it impossible for the reviewing court to grant effectual relief to the complaining party. *In re J.T.*, 221 Ill. 2d 338, 349-50 (2006). In this case, the amended version of section 2(B)(1.5) states that it applies to those defendants convicted of aggravated kidnapping of a minor when "the offense was committed on or after January 1, 1996." Pub. Act 94–945, §1025, eff. June 27, 2006 (amending 730 ILCS 150/2(B)(1.5)). The amended statute thus includes defendant, who committed the aggravated kidnapping at issue in this case in 1999. Further, since the preamended version of section 2(B)(1.5) also covered only those offenses committed on or after January 1, 1996, there are no persons who remain subject to the original statute. The amended section 2(B)(1.5) supersedes the original statute in its entirety.

Because the new version of section 2(B)(1.5) has superseded the old, there is no "actual controversy" regarding the constitutionality of the preamended statute as it applies to defendant. As this court has held, "in those cases where, during the pendency of the case, an amendment remove[s] or alter[s] the potentially unconstitutional language or aspect of a challenged statute, *** the constitutional challenge to the statute is moot." *Johnson v. Edgar*, 176 Ill. 2d 499, 511 (1997); see also *Forest Preserve District v. City of Aurora*, 151 Ill. 2d 90, 94 (1992) (" 'where a challenged statute is amended while the cause is pending, the question of the statute's validity becomes moot, thus rendering unnecessary its review by the court' "), quoting *People v. B.D.A.*, 102 Ill. 2d 229, 233 (1984); *Arrington v. City of Chicago*, 45 Ill. 2d 316 (1970). The amendment to section 2(B)(1.5) eliminated that aspect of the statute which defendant challenged as being unconstitutional as applied to him, *i.e.*, the unqualified definition of aggravated kidnapping of a minor as a sexual offense. Accordingly, the constitutionality of the preamended version of section 2(B)(1.5) as applied to defendant is a moot question.

Nevertheless, without citation to any authority which would call into question these settled principles, the court addresses the constitutionality of the superseded version of section 2(B)(1.5) as it applies to defendant. In order to justify its actions, the court does not

look to the definition of "sex offense" in either the old or new version of section 2(B)(1.5), but, instead, focuses on the transfer provision found in section 11 of the Violent Offender Registration Act. Slip op. at 5-8.

As the court notes, nothing in section 11 authorizes an offender to go before a court of law to seek transfer from the sex offender registry to the violent offender registry. Slip op. at 7. Rather, an offender who wants to ensure that he or she is transferred off the sex offender registry to the violent offender registry will have to contact the "State's Attorney's Office in the county in which the offender was convicted" and request that the office verify, "on a form prescribed by the Illinois State Police," that the crime was not sexually motivated. Pub. Act 94–945, eff. June 27, 2006 (adding 730 ILCS 154/11(a)(2)). Transfer cannot occur until the registering law enforcement agency, and the Illinois State Police (the department that maintains the sex offender registry), have received the completed form. Pub. Act 94–945, eff. June 27, 2006 (adding 730 ILCS 154/11(a)(3)). Further, according to the court, section 11 "does not contemplate judicial review of a decision by the State's Attorney that the offense was sexually motivated, and consequently that the person is ineligible for a transfer." Slip op. at 7.

With this understanding of section 11, the court presumes, based on arguments made in this appeal, that the State's Attorney of Cook County (the county in which defendant was convicted) will decide that defendant's crime is sexually motivated. Slip op. at 8. This decision, the court states, "exemplifies the problem with the statutory scheme" (slip op. at 7), because, now, defendant has "no way off" the sex offender registry (slip op. at 8). From this, the court then concludes, without offering any further explanation, that "[t]he constitutionality of original section 2(B)(1.5)" is "squarely before us." Slip op. at 8.

There are several problems with the court's justification for addressing the merits of defendant's challenge to the original section 2(B)(1.5). First, the State's Attorney of Cook County, although of counsel to the State in this appeal, has not made any representations to this court as to how defendant's crime will be treated under section 11 of the Violent Offender Registration Act. It is inappropriate for "a reviewing court to make fact determinations" (slip op. at 7), particularly when those determinations require predicting the future.

Further, it is unclear why the court believes it is a "problem" for defendant to remain on the sex offender registry when the State's Attorney has concluded that his crime was sexually motivated. Does the court mean to say that it disagrees with the State's Attorney's decision regarding sexual motivation in this particular case and the "problem" is that the court has no way to review that decision? Or does the court mean to say that the "problem" with section 11 of the Violent Offender Registration Act is that it gives a State's Attorney the authority to make the decision, in every case, regarding sexual motivation? Or does the court mean something else? The court never says.

The fundamental difficulty with the court's reasoning, however, is that there is no connection between finding a "problem" with section 11, the *transfer* provision of the Violent Offender Registration Act, and reviving the old section 2(B)(1.5), the *definition* provision of the Sex Offender Registration Act. Regardless of what "problem" exists with section 11–whether it is the inability to review a State's Attorney's decision regarding sexual motivation, the granting of the authority to a State's Attorney to make that decision in the first place, or something else–the old version of section 2(B)(1.5) is *no longer in effect*.

The only way for the court to revive the old version of section 2(B)(1.5) would be to hold the new version of that section void, thus leaving in place the law that previously existed. See, *e.g.*, *Harshman v. DePhillips*, 218 Ill. 2d 482, 489 n.1 (2006). The court does not do this. Instead, the court looks to section 11 of the Violent Offender Registration Act, determines that defendant has "no way off" the sex offender registry, and concludes that this "problem" revives the old section 2(B)(1.5) of the Sex Offender Registration Act. But any problem with transfer under section 11 of the Violent Offender Registration Act is just that–a problem with section 11, not section 2(B)(1.5) of the Sex Offender Registration Act. The new definition of "sex offense" found in the amended version of section 2(B)(1.5) remains unchanged and in effect. The preamended version of section 2(B)(1.5)–the statute that was addressed by the appellate court below–no longer exists. Perhaps, as the court seems to suggest, defendant has some legal claim to bring against section 11 of the Violent Offender Registration Act. However, his claim that the

preamended version of section 2(B)(1.5) is unconstitutional as applied to him is plainly moot.

Finally, any question as to whether the court has erred in reaching defendant's constitutional argument is answered by considering the fundamental structure of the court's analysis. On the one hand, the court expressly holds that the amended version of section 2(B)(1.5) has superseded the previous version of the statute and that the new section 2(B)(1.5) applies to this case. Slip op. at 5. On the other hand, the court expressly holds that the previous version of section 2(B)(1.5) is "squarely before us." Slip op. at 8. In other words, the court is holding–quite literally–that both statutes are in effect at the same time. This cannot be correct.

This court should adhere to the straightforward rule set forth in our case law: " 'where a challenged statute is amended while the cause is pending, the question of the statute's validity becomes moot, thus rendering unnecessary its review by the court.' " *Forest Preserve District v. City of Aurora*, 151 Ill. 2d 90, 94 (1992), quoting *People v. B.D.A.*, 102 Ill. 2d 229, 233 (1984). In accordance with this established precedent, this court should hold that it is a moot question whether the preamended version of section 2(B)(1.5) is unconstitutional as applied to defendant. The court should then vacate that portion of the appellate court's judgment that addressed the constitutionality of the preamended version of section 2(B)(1.5). See *Forest Preserve District*, 151 Ill. 2d at 94; *B.D.A.*, 102 Ill. 2d at 234. Questions regarding the interpretation and legality of section 11 should be left to another day, when those questions are squarely before us.

I disagree with the court's decision to reach the merits of defendant's constitutional claim. However, even if I were to agree that it is appropriate to address that claim, for the following reasons I cannot join the court's opinion.

The judgment of the appellate court below was that the preamended section 2(B)(1.5) was unconstitutional *as applied* to defendant. It is this decision which the State appealed (see slip op. at 1), and which the court asserts is "squarely before us" (slip op. at 8). The court reverses the appellate court's judgment, holding: "Here, the legislature had a rational basis for enacting original section 2(B)(1.5), and that statute is not unconstitutional *as applied* to the defendant."

-21-

(Emphasis added.) Slip op. at 15. The court cannot reach this conclusion on the record before us.

As we have previously explained:

"A court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. *Reno v. Flores*, 507 U.S. at 300-01, 123 L. Ed. 2d at 15-16, 113 S. Ct. at 1446 (when there are no findings or evidentiary record, the constitutional challenge must be facial). Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature. See *In re R.C.*, 195 Ill. 2d 291, 299-300 (2001); see also *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 555-56 (1996) (McMorrow, dissenting) (reaching the merits of a constitutional 'as applied' challenge without the presentment or circuit court consideration of any evidence creates constitutional due process concerns). Nor would it be appropriate for this court, *sua sponte*, to consider whether [a] statute has been constitutionally applied since we, as a reviewing court, are not arbiters of the facts." *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004).

In this case, the court notes that the circuit court made no findings regarding the sexual motivation of defendant's crime. Slip op. at 7. In addition, the court vacates the appellate court's determination that defendant's crime was not sexually motivated. Slip op. at 7. Thus, as this case presently stands, there are no judicial findings of fact with respect to whether defendant's crime was sexually motivated. It is error, therefore, for the court to make an as-applied determination regarding the constitutionality of the preamended section 2(B)(1.5).

For the foregoing reasons, I respectfully dissent.

JUSTICES FREEMAN and KILBRIDE join in this dissent.