FIFTH DIVISION
December 21, 2007

No. 1-06-3523

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| BRIANON PAIGE, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Mary Margaret Brosnahan, |
| | ) | Judge Presiding. |

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a bench trial, defendant Brianon Page was convicted of possession of a controlled substance and sentenced to 2½ years' in the Illinois State Penitentiary. The trial court also ordered defendant to pay $1,125 in fines, fees and costs. On appeal defendant raises the following issues: (1) his conviction should be reversed because the State failed to establish a proper chain of custody; (2) imposition of mental health court and youth diversion/peer court fees violated due process; (3) he is entitled to a $5-per-day credit against his drug assessment for the 49 days he spent in custody; and (4) the trial court improperly imposed a $5 court system fee.

BACKGROUND

Officer Rios and Officer Pellerano testified that on June 11, 2006, around 10:55 p.m. they observed defendant engage in a verbal altercation with another man in the 800 block of Cicero Avenue, in Chicago. As they approached, the altercation ended and defendant began to walk

away. The officers saw defendant throw a plastic baggie to the ground.

Rios said she recovered the baggie. Pellerano originally testified that he recovered the baggie, but later stated that it was Rios who did so. It contained a white powder substance which they suspected to be cocaine. Both officers admitted that in their report they described the recovered item as a white "rock-like substance." Rios testified she had exclusive custody and control of the baggie until she arrived at the station and inventoried it under number 1064762. Rios gave the sealed bag to the desk sergeant and he put it in the vault to be transported to the Illinois State Police crime lab. Pellerano also testified that he inventoried the recovered item.

Both the State and defense stipulated that forensic chemist Beerman from the Illinois State Police crime lab and an expert in the field of forensic chemistry would testify that he received "one item of a chunky substance" in a sealed condition from the Chicago police department under inventory number 1064762. Total weight of this item was .1 gram, and after conducting tests accepted in the field of forensic chemistry for ascertaining the presence of a controlled substance, it was Beerman's opinion to a reasonable degree of scientific certainty that the item was positive for cocaine. Both the State and defense further stipulated that Beerman resealed the item and would identify it in court as the item he tested.

Defendant testified he was on his way home and when Officers Rios and Pellerano approached him they asked for identification. He said he was the only person on the street and had not engaged in a verbal altercation, dropped anything or attempted to run from the officers. After defendant told the officers he did not have identification, Pellerano searched defendant while Rios searched the ground. Defendant testified that Pellerano lifted up his shirt and said, "Here is

the rock." According to defendant, Pellerano did not find this item on his person but, rather, already had the item in his hand. Defendant was arrested and transported to the police station. Defendant had a prior conviction for second degree murder and for possession of a controlled substance with intent to deliver.

Defendant was found guilty of possession of a controlled substance and sentenced to 2½ years' imprisonment. The court imposed a total of $1,125 in fines, fees, and costs including the $10 mental health court fee, the $5 youth diversion/peer court fee, the $500 controlled substance assessment, and the $5 court system fee. Defendant appeals.

ANALYSIS

I. Chain of Custody

Defendant seeks reversal of his conviction contending the record reflects a complete breakdown in the chain of custody because the State failed to prove that "the substance recovered at the scene was a controlled substance." In support of that contention, he argues that "the description of the item recovered by the officers and the description of the item tested by the forensic chemist simply did not match and the officers' testimony regarding the inventory of the recovered item was conflicting."

Where a defendant is accused of a narcotics offense, the prosecution must prove a chain of custody over the substance that is sufficiently complete to make it improbable that the evidence has been tampered with or accidentally substituted. *People v. Woods*, 214 Ill. 2d 455, 466-67 (2005). "The State must show that the police took reasonable protective measures to ensure that the substance recovered from the defendant was the same substance tested by the forensic

chemist." *Woods*, 214 Ill. 2d at 467. The burden then shifts to the defendant to show actual tampering, alteration or substitution. *Woods*, 214 Ill. 2d at 468. Unless the defendant "produces evidence of actual tampering, substitution or contamination, a sufficiently complete chain of custody does not require that every person in the chain testify, nor must the State exclude every possibility of tampering or contamination." *Woods*, 214 Ill. 2d at 467. " 'Once the State has established the probability that the evidence was not compromised, and unless the defendant shows actual evidence of tampering or substitution, deficiencies in the chain of custody go to the weight, not admissibility, of the evidence.' " *Woods*, 214 Ill. 2d at 467, quoting *People v. Bynum*, 257 Ill. App. 3d 502, 510 (1994). It is not erroneous to admit evidence even where the chain of custody has a missing link if "there was testimony which sufficiently described the condition of the evidence when delivered which matched the description of the evidence when examined." *Woods*, 214 Ill. 2d at 468. Such a ruling may be reversed only where it constituted a clear abuse of discretion. *People v. Stechly*, 225 Ill. 2d 246, 312 (2007).

Woods held that a challenge to the chain of custody of an alleged controlled substance is considered an attack on the admissibility of the evidence rather than an attack on its sufficiency to uphold a conviction and is thus subject to the ordinary rules of waiver. *Woods*, 214 Ill. 2d at 472-74. The *Woods* court reasoned that the chain of custody establishes a foundation for such evidence as reliable and admissible; it does not function as proof of the existence of an element of the crime of possession of a controlled substance. Accordingly, a challenge to the chain of custody does not serve as a challenge to the sufficiency of the evidence to support a conviction and is not exempt from waiver. *Woods*, 214 Ill. 2d at 472-74.

Defendant, in the instant case, argues that there was a complete breakdown in the chain of custody allowing defendant to challenge the chain of custody for the first time on appeal. We are mindful that *Woods* contemplated the situation where there could be a complete breakdown in the chain of custody, thus enabling a defendant to raise the issue for the first time on appeal despite a stipulation at trial. *Woods*, 214 Ill. 2d at 471. However, based on the factual record, the instant case does not present that rare situation where a complete breakdown in the chain of custody occurred.

In his brief defendant concedes, "While the inventory number and the amount of the recovered and tested items in the present case did, in fact, match, the descriptions of these items did not." Defendant argues that the prosecution failed to establish that the required protective measures were taken in this case for the following reasons: (1) the stipulated description of the items tested by the forensic scientist failed to match the description by the officers of the substance inventoried; and (2) the stipulated testimony did not mention the color or packaging of the substance inventoried.

Both Officers Rios and Pellerano testified the suspected cocaine was a white powder-like substance. Both officers in their police reports described the suspect cocaine as a white rock-like substance. However, Officer Pellerano further testified that the baggie contained a "white powder/rock-like object" which resulted from the crack cocaine being rolled into the baggie. Defendant, in support of his argument, relies on the fact that the stipulation between the parties described the contents of the bag as "one item of a chunky substance."

The various descriptions of the substance at issue in the instant case, including "white powder-like" substance, "white rock-like substance," "white powder/rock-like object," and "one item of a chunky substance," are not identical. However, because the stipulated testimony established that the evidence was received in a sealed condition with a matching inventory number, a detailed matching description was unnecessary to establish that the integrity of the evidence had not been compromised. *People v. Johnson*, 361 Ill. App. 3d 430, 442 (2005). Once the prosecution established the probability that the evidence was not compromised, and because the defendant did not show actual evidence of tampering or substitution, the deficiencies in the chain of custody went to the weight, not to the admissibility, of the evidence. *Woods*, 214 Ill. 2d at 467.

For the reasons previously discussed, the record does not reflect a complete breakdown in the chain of custody. The experienced trial judge is presumed to have followed the law and given proper consideration to any deficiencies when weighing the evidence as the trier of fact in the bench trial. *People v. Mandic*, 325 Ill. App. 3d 544, 546 (2001); *People v. Stack*, 311 Ill. App. 3d 162, 173-74 (1999). On this record, we cannot find that the trial court abused its discretion when it admitted the contraband into evidence.

## II. Mental Health Court and Youth Diversion Fees

In connection with finding defendant guilty of possession of a controlled substance, the court also ordered defendant to pay a total of $1,125 in fines, fees and costs. The fees included a $10 mental health court fee, which is used to finance "the mental health court, the county drug court, or both" pursuant to section 5-1101(d) of the Counties Code. 55 ILCS 5/5-1101(d-5)

1-06-3523

(West 2006). Also included was the $5 youth diversion/peer court fee, which goes into "an account specifically for the operation and administration of a teen court, peer court, peer jury, youth court, or other youth diversion program" pursuant to section 5-1101(e). 55 ILCS 5/5-1101(e) (West 2006). Defendant asks this court to vacate these fees and reduce the total assessment by $15 because the fees violate his federal and state due process rights. U.S. Const., amend XIV; Ill. Const. 1970, art. I, §2. He contends that "neither fund bears a rational relationship to the offense of possession of a controlled substance."

Whether a statute is constitutional is reviewed under a *de novo* standard. *People v. Jones*, 223 Ill. 2d 569, 596 (2006). Statutes are presumed constitutional, and we must construe the statute so as to uphold its constitutionality and validity. *Jones*, 223 Ill. 2d at 595. If the facts show that the legislation is reasonable, it must be upheld. *People v. Johnson*, 225 Ill. 2d 573, 585 (2007). The party challenging the constitutionality of the statute has the burden of clearly demonstrating a constitutional violation. *People v. Malchow*, 193 Ill. 2d 413, 418 (2000). Defendant contends that the "rational basis test is the analytical method used to determine whether a due process violation has occurred when, as in this case, the statute under consideration does not affect a fundamental constitutional right."

Under the rational basis test, a statute is constitutional if it has a reasonable relationship to the public interest being protected, and the manner of achieving that goal is also reasonable. *People v. Lindner*, 127 Ill. 2d 174, 180 (1989). Using this test, a court must (1) identify the public interest the statute is intended to protect–in other words, the purpose of the statute, (2) examine whether the statute bears a reasonable relationship to that interest, and (3) determine the

7

reasonableness of the method used to protect or further that interest. *Lindner*, 127 Ill. 2d at 180. If there is a conceivable basis for finding the statute rationally related to a legitimate state interest, the statute must be upheld. *Jones*, 223 Ill. 2d at 595-96.

The statute in issue provides, in relevant part, as follows:

"Additional fees to finance court system. A county board may enact by ordinance or resolution the following fees:

* * *

(d-5) A $10 fee to be paid by the defendant on judgment of guilty or a grant of supervision under Section 5-9-1 of the Unified Code of Corrections [730 ILCS 5/5-9-1] to be placed in the county general fund and used to finance the county mental health court, the county drug court, or both.

(e) In each county in which a teen court, peer court, peer jury, youth court, or other youth diversion program has been created, a county may adopt a mandatory fee of up to $5 to be assessed as provided in this subsection. Assessments collected by the clerk of the circuit court pursuant to this subsection must be deposited into an account specifically for the operation and administration of a teen court, peer court, peer jury, youth court, or other youth diversion program. The clerk of the circuit court shall collect the fees established in this subsection and must remit the

8

fees to the teen court, peer court, peer jury, youth court, or other youth diversion program monthly, less 5%, which is to be retained as fee income to the office of the clerk of the circuit court. The fees are to be paid as follows:

\*\*\*

(2) a fee of up to $5 paid by the defendant on a judgment of guilty or grant of supervision under Section 5-9-1 of the Unified Code of Corrections for a felony ; for a Class A, Class B, or Class C misdemeanor; for a petty offense; and for a business offense." 55 ILCS 5/5-1101 (d-5), (e)(2) (West 2006).

Statutory interpretation requires giving effect to the intent of the legislature. *People v. Ward*, 215 Ill. 2d 317, 324 (2005). We begin with the language of the statute, which must be given its plain and ordinary meaning. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000). A fine can be punishment for a conviction, whereas a fee or cost seeks to reimburse the State for expenditures incurred in the prosecution. *Jones*, 223 Ill. 2d at 581-82. In the instant case, each charge is delineated as a "fee" in the statute, and the general statute authorizing the imposition of the charge is entitled, "Additional fees to finance court system." 55 ILCS 5/5-1101 (West 2006).

However, as instructed by the Illinois Supreme Court in *Jones*, while the label of the legislature is strong evidence as to the nature of the charge, the actual attributes of the charge at issue must be examined in resolving the question as to whether the charge is in fact a fee or a fine.

*Jones*, 223 Ill. 2d at 599. In *Jones*, the court explained that a "charge is a fee if and only if it is intended to reimburse the State for some cost incurred in defendant's prosecution. [Citations.]" *Jones*, 223 Ill. 2d at 600. We are mindful of what the Illinois Supreme Court in *Jones* considered to be the most important fact in determining whether a charge is a fee or a fine, specifically, "that this charge does not seek to compensate the State for any costs incurred as the result of prosecuting the defendant. This is the *central* characteristic which separates a fee from a fine." (Emphasis in original.) *Jones*, 223 Ill. 2d at 600. The court in *Jones* concluded that the $5 charge to the spinal cord fund was "clearly a fine, the label notwithstanding," because the charge did not seek to compensate the State for any costs incurred as the result of prosecuting the defendant. *Jones*, 223 Ill. 2d at 600.

The attributes of the charges imposed in the instant case to be deposited with the mental health court and the youth diversion/peer court reflect that these charges are properly characterized as fines, despite their label as "fees." Similar to the spinal cord fund addressed in *Jones*, the charges in the instant case do not seek to compensate the State for any costs incurred as the result of prosecuting the defendant. Accordingly, the $10 mental health court charge and the $5 youth diversion/peer court charge may each properly be viewed as a criminal penalty or pecuniary punishment.

Defendant further contends that "the statute at issue in the instant case violates the constitutional guarantee of due process because it is an unreasonable and arbitrary method of furthering the State's legitimate interest in financing the court system." In support of that contention, he relies on the fact that there is no nexus between his conviction for possession of a

controlled substance and the charges imposed. He argues that neither his "offense, conviction, nor sentence involved the resources of the types of programs financed by the mental health court and youth diversion/peer court fees." Defendant further argues that even if the charges are fines we must evaluate whether the usage to which the fines are put bears a rational relation to drug possession-the crime of which he was convicted.

A similar argument was made in *Jones* in challenging the $5 charge designated for the Spinal Cord Injury Paralysis Cure Research Trust Fund. The court in *Jones* rejected this argument as follows:

> "A defendant has no basis for protesting the usage to which his
>
> criminal fines are put. The sole inquiry is whether the amount of
>
> the fine is excessive when compared to the criminal conduct in
>
> which the defendant is found to have engaged. So far as the
>
> propriety of inflicting a pecuniary punishment on a defendant is
>
> concerned, it makes no difference whether the fines are designated
>
> for deposit in the Spinal Cord Injury Paralysis Cure Research Trust
>
> Fund or the general state treasury." *Jones*, 223 Ill. 2d at 602.

In *Jones*, the court took into consideration the question of whether the $5 fine imposed in that case was disproportionate to the crime and resolved the fine's constitutionality as follows:

> "The $5 charge imposed by section 5-9-1.1(c) of the
>
> Unified Code of Corrections, although labeled a 'fee,' is in fact in
>
> the nature of the fine. Thus, its purpose is punitive. Accordingly,

11

the fact that the proceeds of that fine are earmarked for a specific purpose is irrelevant to its constitutionality. So far as the defendant who is subject to a monetary fine is concerned, due process requires only that the punishment imposed be rationally related to the offense on which he is being sentenced. In the context of fines, the inquiry is whether the amount of the fine is grossly disproportionate to the offense. In this case, that test is clearly satisfied." *Jones*, 223 Ill. 2d at 605.

Relying on the principles articulated in *Jones*, we noted the rational basis test applies if a court determines that the charge is a fee because it compensates for some cost of prosecuting the defendant. *Price*, 375 Ill. App. 3d at 700. However, we concluded in *Price* that when the charge is a fine "it is a punishment, and a court may only vacate it if it is disproportionate to the crime because '[a] defendant has no basis for protesting the usage to which his criminal fines are put.' " *Price*, 375 Ill. App. 3d at 700, quoting *Jones*, 223 Ill. 2d at 602.

Mindful of the principles articulated in *Jones*, and recently applied in *Price*, we conclude the charges, in the instant case, although labeled as "fees," are in fact fines, which are punitive in nature. The fact that these fines are designated for a specific purpose is irrelevant to their constitutionality. See *Jones*, 223 Ill. 2d at 605. Once having determined that the charges at issue were imposed as punishment for a criminal conviction, we consider only whether it is disproportionate to the crime to impose the punishment of a $10 mental health court fine and a $5 youth diversion/peer court fine for the offense of drug possession. *Jones*, 223 Ill. 2d at 605. "So

far as the defendant who is subject to a monetary fine is concerned, due process requires only that the punishment imposed be rationally related to the offense on which he is being sentenced. In the context of fines, the inquiry is whether the amount of the fine is grossly disproportionate to the offense." *Jones*, 223 Ill. 2d at 605.

In the instant case, that test is clearly satisfied and the amounts of the fines are in no way grossly disproportionate to defendant's conviction for the offense of drug possession. See *People v. Gildart*, No. 1-06-1484 (November 7, 2007) ($5 youth diversion/peer court charge was a fine and was not excessive for the offense of possession of a controlled substance.) The fines as punishment are rationally related to the offense in the instant case of drug possession for which defendant was sentenced. For the reasons previously discussed, we reject defendant's arguments that these nominal charges violated his due process rights and affirm the trial court's imposition of these charges.

III. Credit Against Mandatory Drug Assessment

The State concedes that defendant is entitled to a $5-per-day credit for each of his 49 days in custody to offset the mandatory drug assessment. The court imposed a $500 assessment for controlled substances pursuant to section 411.2 of the Illinois Controlled Substances Act. 720 ILCS 570/411.2 (West 2006). Defendant spent 49 days in custody before sentencing.

Section 110-14 of the Code of Criminal Procedure of 1963 provides as follows:

> "Any person incarcerated on a bailable offense who does
> not supply bail and against whom a fine is levied on conviction of
> such offense shall be allowed a credit of $5 for each day so

> incarcerated upon application of the defendant. However, in no case shall the amount so allowed or credited exceed the amount of the fine." 725 ILCS 5/110-14 (West 2006).

The trial court improperly failed to credit defendant $5 per day for the time he spent in presentence custody. *People v. Hare*, 119 Ill. 2d 441 (1988). Under the terms of section 110-14, since defendant was incarcerated for possession of a controlled substance, which is a bailable offense, defendant was entitled to a $5-per-day credit. 725 ILCS 5/110-14(a) (West 2006). This credit applies against the $500 controlled substance assessment, as this assessment is a fine. *Jones*, 223 Ill. 2d at 592. We amend the costs, fines and fees order to reflect a $5-per-day credit for a total of $245 to be applied to defendant's $500 controlled substance assessment.

## IV. Court System Fee

The court imposed a $5 court system fee on defendant pursuant to section 5-1101(a). 55 ILCS 5/5-1101(a) (West 2006). Section 5-1101 provides as follows:

> "(a) A $5 fee to be paid by the defendant on a judgment of guilty or a grant of supervision for violation of the Illinois Vehicle Code [625 ILCS 5/1-100 *et seq*.] other than Section 11-501 [625 ILCS 5/11-501] or violations of similar provisions contained in county or municipal ordinances committed in the county, and up to a $30 fee to be paid by the defendant on a judgment of guilty or a grant of supervision for violation of Section 11-501 of the Illinois Vehicle Code [625 ILCS 5/11-501] or a violation of a similar

provision contained in county or municipal ordinances committed in the county." 55 ILCS 5/5-1101(a) (West 2006).

Applying the terms of section 5-1101, we vacate the $5 court system fee because defendant was found guilty of possession of a controlled substance, which is not a violation of the Illinois Vehicle Code or of similar provisions contained in county or municipal ordinances.

CONCLUSION

For the reasons previously discussed, any defects in the chain of custody go the weight not to the admissibility of the evidence. The record reflects the defendant was proven guilty beyond a reasonable doubt of possession of a controlled substance. The mental health court and youth diversion/peer court charges are constitutional and were properly imposed in the instant case. We vacate the $5 court system fee and further amend the costs, fines and fees order to reflect a $5-per-day credit for the 49 days spent in custody for a total of $250 to be applied to defendant's $500 controlled substance assessment. We affirm the judgment of the circuit court as modified.

Affirmed as modified.

FITZGERALD SMITH, P.J., and TULLY, J., concur.

1-06-3523

1-06-3523