THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MACEO BLACK, Defendant-Appellant.

First District (4th Division)   No. 1—07—1862

Opinion filed September 30, 2009.

Michael J. Pelletier, Patricia Unsinn, and Steven W. Becker, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Ashley Romito, Mary L. Boland, and Jackie A. Thursby-Elvekrog, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

After a bench trial, defendant Maceo Black was convicted of the unlawful restraint of an 11-year-old boy and sentenced to four years and six months in prison. Due to that conviction, defendant currently is registered as a sex offender. On appeal, defendant argues that the trial court failed to make a written finding that the offense had no sexual motivation and that defendant was improperly subjected to a statutory requirement to register as a sex offender.

On January 9, 2009, this court entered an order pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23) in which we affirmed the judgment of the trial court. Defendant subsequently filed a petition for rehearing pursuant to Supreme Court Rule 367 (210 Ill. 2d R. 367). We asked the State to respond, and defendant replied. After taking a closer look at the interplay between the Child Murderer and Violent Offender Against Youth Registration Act (VOYRA) (730 ILCS 154/1 *et seq.* (West 2006)) and the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2006)), we grant the petition for rehearing. Reconsidering the matter in light of the arguments on rehearing, we vacate the imposition of sex offender registration on defendant and remand this matter to the trial court for a determination on whether defendant's offense was sexually motivated.

BACKGROUND

At defendant's bench trial, the State presented the testimony of the victim N.N., his mother, and his uncle. The testimony established that on June 4, 2006, at about 9 p.m., N.N. was 11 years old and waiting for a bus. Defendant, who was carrying several bags of groceries, was also waiting for the same bus. Defendant began talking to N.N. about playing basketball on defendant's team. When the bus arrived,

N.N. complied with defendant's request to help carry the groceries onto the bus. When N.N. rose from his seat to exit the bus at his stop, defendant pulled N.N. by his arm back into his seat, asked him where he was going, and offered him $5 to help defendant carry his groceries home. N.N. refused the money but agreed to help carry the groceries provided that it did not take long because N.N. had to get home or his mother would worry.

They exited the bus at defendant's stop and walked across a street and through an alley to defendant's apartment. N.N. tried to back out of it but complied with defendant's request to carry the bags upstairs and inside the third-floor apartment. Defendant shut the door right away and locked it. N.N. told defendant he had to go home, but defendant did not open the door. Defendant offered N.N. $5 for helping with the bags, but N.N. refused the money. Defendant stood with his back against the door and one hand on the doorknob. N.N. struggled with defendant at the door, and defendant grabbed N.N.'s arm. N.N. pushed defendant out of the way, unlocked the door, and ran from the apartment.

N.N. ran about eight blocks to his home. When he arrived, he was very scared and was shaking while he told his mother what had happened. Then, N.N. told his uncle what had happened and was halfway crying while he talked. N.N. and the uncle got in the uncle's car and drove around until N.N. found defendant's apartment. N.N. and the uncle returned home, and the police were called at about 10 p.m. N.N. told the police what happened, rode in their car, and directed them to defendant's apartment. While the police were driving N.N. home, N.N. saw defendant walking down the street and identified him to the police. The police took defendant into custody.

Chicago police officer Andrew Kroll testified that when a custodial search was performed on defendant, the police recovered a pornographic magazine wrapped in a newspaper that defendant was carrying. The trial judge sustained the defense's objection on relevance grounds to admission of the evidence concerning the pornographic magazine.

Defendant did not testify at his trial. The judge found him guilty of the class four felony offense of unlawful restraint.

At sentencing in May 2007, N.N. read his victim impact statement, stating that defendant took advantage of the fact that N.N. liked to help people, but N.N. was glad his mother told him what to do so he would not be hurt and could get away. After the offense, N.N. felt "bad inside and sad most of the time," stayed in his room, did not talk to his family or friends, and did not do things he usually had enjoyed. He missed school, could not concentrate, and was embarrassed by the offense. He did not want other children like him to be victims.

Defendant's criminal record revealed felony convictions for burglary and forgery, as well as arrests and convictions for misdemeanor solicitation and prostitution offenses that were more than 10 years old. At the time of the unlawful restraint offense at issue here, defendant was 34 years old, 6 feet tall and weighed 180 pounds. According to the presentence investigation report, defendant was a ward of the State from the age of 13 through 21. He reported that he lived in several group homes and was labeled a habitual runaway by the juvenile court system. Defendant reported that he suffered severe physical abuse from his father due to his family believing or assuming that defendant was homosexual, that he was emotionally damaged in the long run, and that he was sexually abused at the age of 16 by a teacher while residing in a group home.

The trial judge referred to N.N.'s victim impact statement and noted that N.N. was

"certainly affected by the incident. He was helping the guy out with some groceries and I don't know what motivation there might have been for [defendant] to try to keep the boy in the apartment against his will, we'll never know what the motivation might have been but it certainly affected [N.N.]."

The judge concluded that merely giving defendant probation would deprecate the serious nature of his offense. The judge noted defendant's criminal record and stated:

"But you have to at some point realize, Mr. Black, you can't do things that affect other people like trying to keep the young boy in your apartment. As I said before I won't speculate as to why, what the motivation was. The fact remains that you did attempt to keep the boy there against his will for whatever reason and he managed to get out, so fortunately nothing else happened."

The judge noted defendant's prior forgery and burglary offenses. Concerning the information contained in defendant's presentence investigation report, the judge stated:

"[A]nd in some situations I read the background, kind of unpleasant to say the least but you can't take out your unpleasantness against other people especially in this case a young boy like [N.N.]."

The judge sentenced defendant to four years and six months in prison. Based upon his conviction of unlawful restraint, defendant is currently listed as a sex offender on the Illinois sex offender registry.

## ANALYSIS

On appeal, defendant argues that the trial court should have entered a written finding that his unlawful restraint offense was not sexually motivated in order to allow him to register under VOYRA rather than SORA. Defendant also contends that he was improperly

placed on the sex offender registry because SORA requires a finding that the offense was sexually motivated and the trial judge here made no such finding. Defendant argues that he should instead be on the violent offender against youth registry because his offense was not sexually motivated.

We will review this issue even though it was not properly preserved for review because defendant challenges the SORA registration portion of his sentence as void and a void sentence can be corrected at any time. *People v. Arna*, 168 Ill. 2d 107, 113 (1995). Furthermore, a sentencing error can affect a defendant's substantial rights and can be reviewed for plain error. *People v. Hicks*, 181 Ill. 2d 541, 544-45 (1998); *People v. Whitney*, 297 Ill. App. 3d 965, 967 (1998), *aff'd*, 188 Ill. 2d 91 (1999); *People v. Rivera*, 307 Ill. App. 3d 821, 834 (1999). See also *People v. Lewis*, 234 Ill. 2d 32 (2009) (plain error review was appropriate where the trial court imposed a street-value fine without a proper evidentiary basis of the current street value of the controlled substance). Here, defendant claims that his registration as a sex offender is improper because the trial court did not determine that the offense was sexually motivated.

This appeal raises issues of statutory construction, which we review *de novo*. *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184 (2009). The fundamental objective of statutory construction is to ascertain and give effect to the intention of the legislature, presuming it did not intend to cause absurd, inconvenient, or unjust results. *People v. Christopherson*, 231 Ill. 2d 449, 454 (2008). A statute is considered in its entirety, keeping in mind the subject addressed and the legislature's apparent objective in enacting it. *People v. Cardamone*, 232 Ill. 2d 504, 512 (2009). The best indication of legislative intent is the language of the statute, given its plain and ordinary meaning. *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 332 (2008). When the statutory language is clear, it will be given effect without resorting to other aids for construction. *People v. Boykin*, 94 Ill. 2d 138, 141 (1983). However, where the language is ambiguous, it is appropriate to examine the legislative history. *Boykin*, 94 Ill. 2d at 141.

Furthermore, a "court presumes that the legislature intended that two or more statutes which relate to the same subject are to be operative and harmonious." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 218 (2008). "A court must compare statutes relating to the same subject and construe them with reference to each other, so as to give effect to all of the provisions of each if possible." *Cinkus*, 228 Ill. 2d at 218. Consequently, we construe section 2(B)(1.5) of SORA (730 ILCS 150/2(B)(1.5) (West 2006)) *in pari materia* with sections 5(b)(1) and 86 of VOYRA (730 ILCS 154/5(b)(1),

86 (West 2006)) because those laws address the same subject of offenders' mandatory registration for kidnapping and unlawful restraint offenses against minors. See *People v. Bills*, 84 Ill. App. 2d 329, 335 (1967) (section of the Code of Criminal Procedure concerning a motion for substitution of judges incorporated and thus was read and construed with the statute providing for change of venue in a criminal case).

VOYRA became law and took effect on June 27, 2006, and significant amendments and corrections to SORA also became effective on that same date. Prior to the June 2006 amendments, SORA did not include sexual motivation as a component of the kidnapping and unlawful restraint offenses against minors that triggered mandatory sex offender registration. Defendant, however, was convicted of and sentenced for unlawful restraint after the effective date of the June 2006 amendments to SORA and enactment of VOYRA.

At the time of defendant's sentencing, SORA required that anyone defined as a sex offender pursuant to the statute must register as such with the chief of police or sheriff where he resides or is temporarily domiciled. 730 ILCS 150/3 (West 2006). Under SORA, *sex offender* includes someone charged and convicted with a sex offense as set forth in the statute. 730 ILCS 150/2(A)(1)(a) (West 2006). As relevant to defendant, SORA included a definition of *sex offense* as unlawful restraint when the victim was under 18 years of age, the defendant was not the victim's parent, and the offense was sexually motivated. 730 ILCS 150/2(B)(1.5) (West 2006) (referencing section 10—3 of the Criminal Code of 1961 (720 ILCS 5/10—3 (West 2006)). " 'Sexually motivated' means one or more of the facts of the underlying offense indicates conduct that is of a sexual nature or that shows an intent to engage in behavior of a sexual nature." 20 ILCS 4026/10(e) (West 2006).

Also at the time of defendant's sentencing, VOYRA required that anyone defined as a *violent offender against youth* pursuant to the statute must register as such with the chief of police or sheriff where he resides or is temporarily domiciled. 730 ILCS 154/10 (West 2006). Under VOYRA, *violent offender against youth* includes someone charged and convicted with a violent offense against youth as set forth in the statute. 730 ILCS 154/5(a)(1)(A) (West 2006). As relevant to defendant, VOYRA included a definition of *violent offense against youth* as unlawful restraint when the victim was under 18 years of age and the defendant was not the victim's parent. 730 ILCS 154/5(b)(1) (West 2006) (referencing section 10—3 of the Criminal Code of 1961 (720 ILCS 5/10—3 (West 2006)). Any person convicted of any of the offenses listed in the statute must register on the Child Murderer and

Violent Offender Against Youth Registry if, at the time of sentencing, the sentencing court verified in writing that the offense was not sexually motivated. 730 ILCS 154/86 (West 2006) (hereinafter verification provision). According to this verification provision, if the offense was sexually motivated, the offender must register pursuant to SORA. 730 ILCS 154/86 (West 2006). Furthermore, a person registered under SORA could only be transferred to the registry under VOYRA if: (1) his sole offense requiring registration was a conviction or adjudication for an offense listed in VOYRA, (2) the State's Attorney's office verified that the person's crime was not sexually motivated, and (3) a certain form was completed and received by designated agencies. 730 ILCS 154/11 (West 2006).

Applying the principles of statutory construction, we conclude that section 2(B)(1.5) of SORA requires the sentencing judge to determine based on evidence that the offense of unlawful restraint was sexually motivated in order for the offense to trigger mandatory registration as a sex offender. 730 ILCS 150/2(B)(1.5) (West 2006). The language of the Sex Offender Management Board Act, which is incorporated into section 2(B)(1.5) of SORA, is not ambiguous and clearly requires that "one or more of the facts of the underlying offense indicates conduct that is of a sexual nature or that shows an intent to engage in behavior of a sexual nature." 20 ILCS 4026/10(e) (West 2006); 730 ILCS 150/2(B)(1.5) (West 2006). In addition to the unambiguous statutory language, we find that our supreme court's decision in *People v. Johnson*, 225 Ill. 2d 573 (2007), and this court's decision in *People v. Woodard*, 367 Ill. App. 3d 304 (2006), support our conclusion that the sentencing judge must find that the defendant's offense was sexually motivated in order for the defendant to be subject to sex offender registration.

In *Johnson*, the defendant was convicted of aggravated kidnapping and registered as a sex offender before the enactment of VOYRA and before the effective date of the SORA amendments that added sexual motivation as a component to several offenses that triggered sex offender registration. *Johnson*, 225 Ill. 2d at 577-78. After VOYRA went into effect, the defendant argued that he should be transferred from the sex offender registry to the violent offender against youth registry because his crime was not sexually motivated. The court ruled that the amendments to the law did not provide for a fresh judicial determination of whether an offense that placed a person on the sex offender registry before June 27, 2006, was sexually motivated. *Johnson*, 225 Ill. 2d at 580-81. The court ruled that the defendant's only remedy was the transfer provision under VOYRA. *Johnson*, 225 Ill. 2d at 581.

In so ruling, the court recognized that "the trial court understandably made no express finding" concerning whether Johnson's offense was sexually motivated because he was convicted of a SORA section 2(B)(1.5) sex offender registration triggering offense *before* the statutory definition hinged on motivation. *Johnson*, 225 Ill. 2d at 582. The implication from that ruling for SORA section 2(B)(1.5) convictions *after* June 27, 2006, which do hinge on the defendant's motivation, is that the trial court's express finding concerning sexual motivation is necessary.

In *Woodard*, 367 Ill. App. 3d at 321-22, the defendant was convicted and sentenced in 2004 of first degree murder of a minor and required to register as a sex offender even though no evidence in the record indicated that the offense was sexually motivated. This court held that the 2004 version of SORA did not violate the defendant's constitutional rights. *Woodard*, 367 Ill. App. 3d at 322. This court also held that the 2006 amendments to SORA, which added the sexual motivation component to the sex offender registration triggering offenses, were not retroactive. *Woodard*, 367 Ill. App. 3d at 323. In so ruling, this court recognized that if the defendant had been convicted and sentenced under the 2006 SORA amendments, she would not have been defined as a sex offender and likely would not have been required to register as such. *Woodard*, 367 Ill. App. 3d at 322-23.

Here, defendant was convicted and sentenced after VOYRA and the 2006 SORA amendments were already in effect. Unlawful restraint is included in the offenses specified under both SORA and VOYRA that trigger mandatory registration. If the victim is under the age of 18, and the defendant is not the victim's parent, the defendant must register under SORA if the offense is sexually motivated; otherwise, the defendant must register under VOYRA. Consequently, the sentencing court must exercise its discretion and make the crucial determination of whether the offense was sexually motivated. Read as a whole, the definitions in both SORA and VOYRA for the offense of unlawful restraint and the verification provision of VOYRA require a sentencing judge to make a finding as to whether the offense was sexually motivated or not. If the sentencing judge finds no sexual motivation, then he verifies that finding in writing, and the defendant must register under VOYRA instead of SORA. See 730 ILCS 150/2(B)(1.5) (West 2006); 730 ILCS 154/5(b)(1), 86 (West 2006). In order to fulfill its statutory duty under SORA and VOYRA, the sentencing court must exercise its discretion and make a determination regarding the existence of sexual motivation; it is the only way to effectuate the intent of the 2006 amendments to SORA and enactment of VOYRA. The statutes do not provide that a defendant must register as a sex of-

fender by default when a sentencing judge either fails to decide the sexual motivation issue or withholds that decision.

Defendant contends that the trial judge's oral statements at sentencing indicated that no evidence supported a finding that defendant's unlawful restraint offense was sexually motivated. The record, however, does not support defendant's characterization of the trial judge's comments. According to the record, the trial judge stated that N.N.'s escape thwarted whatever purpose defendant had for locking N.N. in defendant's apartment and the judge would not "speculate as to why, what the [defendant's] motivation was." Clearly, the trial judge never addressed the issue of sexual motivation at all. Consequently, we reject defendant's request that we should remand this matter to the trial court with directions to enter a written finding that defendant's offense was not sexually motivated.

Furthermore, the State disputes defendant's claim that there is no evidence in the record of defendant's sexual motivation. Specifically, the State argues that the trial judge was aware that within one hour of N.N.'s escape, defendant was taken into custody and found to be in possession of a pornographic magazine wrapped in a newspaper. Furthermore, in addition to defendant's felony convictions for burglary and forgery, his criminal background reveals arrests and convictions for misdemeanor solicitation and prostitution offenses.

The State argues the evidence at trial revealed that defendant enticed a young child by discussing an opportunity to play on a basketball team and then offering him money to carry groceries to defendant's apartment. Defendant sought to remove N.N. from public view by directing him to put the groceries inside the apartment. Once N.N. was inside, defendant locked the door and moved to block it. The State argues that courts have acknowledged that offenses like unlawful restraint and kidnapping often are precursor offenses to juvenile pimping or sexual exploitation of a child. See *People v. Fuller*, 324 Ill. App. 3d 728, 730-33 (2001) (court found an obvious connection between an aggravated kidnapping offense and sexual motivation where the defendant was convicted of aggravated kidnapping after he stole a van with two children inside it, drove around for about 20 minutes, did not touch the children who later escaped, and told the police that he planned to find a hotel room and ask the girl if she had any friends).

In addition, our review of the record reveals that defendant's presentence investigation report indicated that when he was a ward of the State, he lived in several group homes and was labeled a habitual runaway by the juvenile court system. Defendant reported that he was emotionally damaged by severe physical abuse from his father due to

assumptions about defendant's sexual orientation. He also reported that he was sexually abused at the age of 16 by a teacher while residing in a group home. Furthermore, defendant's age, height and weight in comparison to 11-year-old N.N. likely contributed to the fear shown by N.N. after he escaped the apartment and reported the offense to his family. N.N. knew that he had escaped a very dangerous situation, was grateful that his mother had discussed such dangers with him, and did not want other children to be victimized by defendant.

We conclude that the trial court erred in withholding a decision on whether defendant's unlawful restraint offense was sexually motivated. Because it is inappropriate for a reviewing court to make a fact determination concerning the existence of sexual motivation (*Johnson*, 225 Ill. 2d at 582), we remand this matter to the trial court to make a finding on whether defendant's offense was sexually motivated. If the trial court determines that defendant's offense was not sexually motivated, then the court must verify the lack of sexual motivation in writing. We take no position on what finding the sentencing judge should make; rather, we rely on the experienced trial judge to render a finding based on the law and the evidence.

Accordingly, we vacate the imposition of sex offender registration on defendant and remand the cause to the trial court for a determination on whether defendant's offense was sexually motivated and further proceedings consistent with this opinion.

Vacated in part; cause remanded.

TOOMIN, P.J., and FITZGERALD SMITH, J., concur.