# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Cardona, 2012 IL App (2d) 100542**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HERNANDO CARDONA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0542 |
| Filed | March 2, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The appellate court affirmed the trial court's ruling at a certification hearing requiring defendant, who was acquitted of indecent solicitation of a child and found not not guilty of unlawful restraint at a discharge hearing held after his schizophrenia raised the issue of his fitness, to register as a sex offender, notwithstanding defendant's contention that the trial court could not logically find that the unlawful restraint was sexually motivated when defendant was acquitted of indecent solicitation, since the evidence more than "indicated" that defendant was motivated to engage in conduct of a sexual nature. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 07-CF-2036; the Hon. Fred L. Foreman, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Thomas A. Lilien and Kathleen Weck, both of State Appellate Defender's Office, of Elgin, for appellant. |
|---|---|
| | Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. |
| | Justices Bowman and Hutchinson concurred in the judgment and opinion. |

## OPINION

¶ 1    Defendant, Hernando Cardona, appeals the trial court's certification of his sex offender status. For the following reasons, we affirm.

¶ 2                     I. BACKGROUND

¶ 3                     A. Underlying Facts

¶ 4    On May 18, 2007, the victim, A.K., then in fifth grade and age 11, was walking home from school. A friend and classmate, D.H., called out to A.K. to wait. D.H. told A.K. that "a man" was following her and she did not want to walk alone. A.K. walked with D.H. to the corner, and D.H. turned off to go home. A.K. was then alone.

¶ 5    Soon after, A.K. felt the man grab her wrist from behind. The man spoke some words to A.K., the content of which are in dispute, but he allegedly stated that he wanted to have sex with her. After some struggle, A.K. kicked the man in the shin and broke free.

¶ 6    A.K. ran home and told her father what happened. Her father called the police. The man was later determined to be defendant, age 51 and a diagnosed schizophrenic. Defendant was apprehended as a result of D.H.'s positive identification and A.K.'s corroborating information.

¶ 7    A grand jury indicted defendant on two counts: (1) indecent solicitation of a child (in that defendant, a person of 17 years of age and upwards, with the intent that the offense of predatory criminal sexual assault of a child be committed, knowingly solicited A.K., a child under the age of 17 years, to perform an act of sexual penetration (720 ILCS 5/11-6(a) (West 2008))); and (2) unlawful restraint (in that defendant knowingly and without authority detained A.K., grabbing A.K. and holding her against her will (720 ILCS 5/10-3(a) (West 2008))).

¶ 8                              B. Section 115-10 Hearing

¶ 9        The State moved to permit testimony, pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2008)), of out-of-court statements made by A.K. to her father and to Officer Michael Taylor, describing the acts that comprised the elements of the charged offenses. The trial court conducted a hearing to determine whether the time, content, and circumstances of the statements provided sufficient safeguards of reliability to be admitted as substantive evidence at the upcoming trial.

¶ 10       A.K.'s father testified that, on the afternoon in question, he was standing outside in his front yard when A.K. ran up to him, crying and out of breath. A.K. was hyperventilating and would not calm down. Finally, A.K. was able to tell her father that a man grabbed her on the way home from school and said he wanted to have sex with her.

¶ 11       Taylor testified that he was a juvenile officer for the City of Waukegan with 14 years of experience. He also completed a 40-hour class involving interview techniques for child victims and witnesses. Part of his duties included teaching a Drug Abuse Resistence Education (DARE) class to fifth-grade students at A.K.'s school. Taylor knew A.K. because she had attended his DARE class once per week over the course of the school year. Taylor interviewed A.K. in the principal's office at the school.

¶ 12       Taylor asked A.K. if she knew why he was conducting the interview. A.K. responded that it was because of the man who followed her home from school. A.K. indicated the route that she had taken home, noting that she walked part of the way with D.H. She knew that defendant had been following D.H. After D.H. turned a corner, defendant (who had temporarily left the girls' sight) grabbed A.K. by the wrist and, in an Hispanic accent, asked A.K. if she wanted to have sex with him. A.K. told defendant, "No." Defendant then made a statement to the effect of: "You know you want to." A.K. tried to pull away. Defendant hit A.K. on the arm with his free hand. A.K. kicked defendant in the shin, broke free, and ran away. Defendant continued to follow her. He was not running, but he was walking fast. A.K. made it home, where she saw her father in the front yard.

¶ 13       Taylor stated that A.K. looked embarrassed when relating that defendant had asked for sex; she looked down and did not look Taylor in the face. However, A.K. did not seem particularly comfortable at any point in the interview, not just those portions pertaining to defendant's request for sex. Taylor stated that the information relayed by A.K., even after a half-hour of questioning, contained zero inconsistencies.

¶ 14       Although A.K. was able to relate certain features concerning defendant's identity (*i.e.*, clothing, accent, *general* appearance), she was not able to identify him in a photo lineup. She declined to point to any of the photos. She told Taylor that, during the attack, she had been too afraid to look defendant in the face (it was D.H. who had identified defendant).

¶ 15       The trial court deemed A.K.'s out-of-court statements sufficiently reliable to be admitted at the upcoming trial. Of particular note to the court was the spontaneous and consistent nature of the statements. The court also pointed to A.K.'s refusal to identify defendant in a photo lineup, essentially stating that no ulterior motive tempted A.K. to make a potentially false identification.

-3-

¶ 16                          C. Unfitness and Discharge Hearing

¶ 17       Meanwhile, shortly after defendant had been charged, the trial court ordered a fitness evaluation. The clinical psychologist reported that defendant appeared to be in an acute schizophrenic state, was an unreliable historian (once stating that he moved from "Atahualpa," which is not a real location but a sixteenth-century Inca ruler), and could not communicate the offense with which he was charged (even with the help of his Spanish-speaking translator). The court ruled defendant unfit to stand trial and ordered that he be placed in the Elgin Mental Health Center.

¶ 18       After more than a year at the mental health center, defendant's providers were unable to restore him to fitness. Therefore, defense counsel moved for a discharge hearing, a proceeding where an unfit defendant is tried before a court without a jury, where the State still has the burden of proving the defendant guilty beyond a reasonable doubt, and where one of three findings is made: (1) not guilty (acquittal); (2) not guilty by reason of insanity (acquittal); or (3) not "not guilty" (nonacquittal). 725 ILCS 5/104-25 (West 2008).

¶ 19       The court conducted the discharge hearing nearly two years after the charged offense took place. By this time, A.K. had just turned 13. The court allowed A.K.'s father and Taylor to testify to the out-of-court statements that A.K. made to them following the incident. In the section 115-10 hearing, the court had deemed these statements sufficiently reliable to be admitted as substantive evidence at trial, and, in the absence of a trial, they would be admitted as substantive evidence at the discharge hearing. Both A.K.'s father and Taylor testified that A.K. told them that, while grabbing her, defendant stated that he wanted sex.

¶ 20       A.K. testified consistently with the statements she had given to her father and to Taylor–with one significant discrepancy. When asked on direct examination what defendant said to her, A.K. answered: "He said that whether I liked it or not, I was going to go with him." When asked directly if defendant ever said anything along the lines of, "I want you to have sex with me," A.K. answered: "Not that I remember." The State asked A.K. to clarify, and A.K. again stated that she did not remember "one way or the other" whether defendant mentioned sex. During cross-examination, A.K. again stated that she had no memory of defendant saying anything about sex.

¶ 21       At the close of evidence, the trial court ruled as follows. As to the indecent solicitation charge, the court entered an acquittal finding of "not guilty," stating in the written form order: "The evidence does not prove the defendant guilty beyond a reasonable doubt. Judgment of acquittal is granted." The court noted that there was "conflicting testimony" that left "some doubt" as to what defendant actually said to A.K. (*i.e.*, whether defendant verbally solicited A.K. for sex).

¶ 22       As to the unlawful restraint charge, the court entered a nonacquittal finding of "not 'not guilty,' " stating in the written form order: "Based on a standard of proof beyond a reasonable doubt, no acquittal should be entered by this Court. The defendant is *not* found 'not guilty.' No judgment of acquittal is entered." (Emphasis added.)


¶ 23                                 D. Certification Hearing

¶ 24       Following the discharge hearing, defendant was remanded to the care of the mental health

facility. However, defendant's extended treatment was set to end within four months. The State moved for the court to consider two alternative bases by which to retain supervision over defendant: (1) civil commitment (requiring a finding that defendant constituted a serious threat to society); or (2) registration as a sex offender (requiring a finding that the crime for which defendant received a nonacquittal, *i.e.*, the unlawful restraint, was "sexually motivated"). Based on the most recent fitness reports, the court found that defendant did not meet the criteria for civil commitment. However, the court required defendant to register as a sex offender, finding that one or more of the facts underlying the offense of unlawful restraint indicated an intent to engage in behavior of a sexual nature. This appeal followed.

¶ 25                                   II. ANALYSIS

¶ 26        The gravamen of defendant's appeal is that the trial court cannot logically have found the unlawful restraint to have been sexually motivated where the court acquitted him of the more traditional sex crime with which he was charged, indecent solicitation. For the reasons that follow, we reject this argument. However, we must first address issues of jurisdiction and review, and, later, of due process.

¶ 27                                  A. Jurisdiction

¶ 28        As a threshold matter, the State sets forth a jurisdictional issue previously advanced in a separate motion to dismiss this appeal. On July 15, 2011, this court denied the motion. The State reasserts the issue to preserve the claim for further review, if necessary. The State argues that, because defendant's motion to reconsider the trial court's order certifying defendant as a sex offender was filed more than 30 days after the initial order was entered, defendant's motion was untimely and did not lay a proper basis for appellate jurisdiction here.

¶ 29        Defendant responds, and we agree, that, under the circumstances of this case, the court was revested with jurisdiction. Under the revestment doctrine, litigants may revest a trial court with personal and subject matter jurisdiction after the 30-day period following final judgment if they actively participate in proceedings that are inconsistent with the merits of the prior judgment. *People v. Gutman*, 401 Ill. App. 3d 199, 210 (2010) (this portion of *Gutman* was affirmed without comment in *People v. Gutman*, 2011 IL 110338, ¶ 46). Conduct may be considered inconsistent with a prior judgment if it can reasonably be construed as an indication that the parties do not view the prior judgment as final and binding. *Gutman*, 401 Ill. App. 3d at 210. If the trial court is revested with jurisdiction, then a notice of appeal filed within 30 days after a ruling on the untimely postjudgment motion vests the appellate court with jurisdiction. *Id.*

¶ 30        Here, the trial court granted defendant multiple continuances on the motion to reconsider, and the State never once objected. Then, the State participated in the hearing on the motion to reconsider, without any objection to its timeliness. By participating in and arguing on the merits at the hearing on the motion to reconsider, the State acted as though it did not view the prior judgment as binding, revesting the court with jurisdiction.

¶ 31                                B. Standard of Review

¶ 32    The parties first debate whether a nonacquittal of the offense of unlawful restraint of a child: (a) requires a defendant to register as a sex offender only if the trial court makes a separate, additional finding that the offense was sexually motivated; *or* (b) triggers an automatic mandate that a defendant register as a sex offender (with no deference given to the trial court's registration order). This issue has been addressed directly in *People v. Black*, 394 Ill. App. 3d 935, 944 (2009), which held that a trial court must make a specific factual determination that the unlawful restraint was sexually motivated in order for a defendant to register as a sex offender.

¶ 33    Prior to 2006, a nonacquittal of the offense of unlawful restraint of a child automatically required a defendant to register under the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2004)). SORA set forth registration requirements for sex offenders, including those who had committed the crime of unlawful restraint when the victim was under 18 years of age and the perpetrator was not the victim's parent. 730 ILCS 150/2(B)(1.5) (West 2004). No further findings were necessary. The rationale was that those who commit unlawful restraint or kidnaping of children "pose such a threat to sexually assault those children as to warrant their inclusion in the sex offender registry." (Internal quotation marks omitted.) *People v. Johnson*, 225 Ill. 2d 573, 588 (2007) (quoting, among others, *In re Phillip C.*, 364 Ill. App. 3d 822, 831 (2006)).

¶ 34    However, in 2006, the legislature amended SORA and, in the same public act, enacted the Child Murderer and Violent Offender Against Youth Registration Act (VOYRA). Pub. Act 94-945 (eff. June 27, 2006).[1] SORA was amended to define unlawful restraint as a "sex offense" when the victim was under 18 years of age, the defendant was not the victim's parent, *and the offense was sexually motivated as defined in section 10 of the Sex Offender Management Board Act* (20 ILCS 4026/10 (West 2006)). Pub. Act 94-945, § 1025 (eff. June 27, 2006) (amending 730 ILCS 150/2(B)(1.5)). "Sexually motivated" means that one or more of the facts underlying the offense indicate conduct that is of a sexual nature or that shows an intent to engage in behavior of a sexual nature. 20 ILCS 4026/10(e) (West 2006). The new act, VOYRA, set forth registration requirements for violent offenders against youth, including those who had committed the crime of unlawful restraint when the victim was under 18 years of age and the perpetrator was not the victim's parent. 730 ILCS 154/5(b)(1) (West 2006). Registration under VOYRA, as opposed to SORA, required that, at the time of sentencing, the sentencing court verify in writing that the offense was *not* sexually motivated. 730 ILCS 154/86 (West 2006).

¶ 35    The *Black* court held that, "[r]ead as a whole, the definitions in both SORA and VOYRA for the offense of unlawful restraint and the verification provision of VOYRA [that the sentencing judge verify in writing that the offense was not sexually motivated] require a sentencing judge to make a finding as to whether the offense was sexually motivated or not [for registration under either act]." *Black*, 394 Ill. App. 3d at 942. The court summarized that,

_____

[1]Neither party discusses VOYRA–or its interplay with SORA–an omission we find misleading on the State's part as to this issue and on defendant's part as to subsequent issues.

"[i]n order to fulfill its statutory duty under SORA and VOYRA, the sentencing court must *exercise its discretion* and make a determination regarding the existence of sexual motivation; it is the only way to effectuate the intent of the 2006 amendments to SORA and enactment of VOYRA." (Emphasis added.) *Id.*

¶ 36    Therefore, we agree with defendant that a nonacquittal of the offense of unlawful restraint of a child requires registration as a sex offender only upon the trial court's separate finding that the offense was sexually motivated, a finding entitled to deference on appeal. However, we find that the court's factual determination should be reviewed according to the manifest-weight standard, not the abuse-of-discretion standard. Defendant interprets the *Black* court's statement that "the sentencing court must exercise its discretion to make a determination regarding the existence of sexual motivation" as authority that this court should review the trial court's finding of sexual motivation according to the abuse-of-discretion standard. We, however, take the *Black* court's use of the word "discretion" to have been made in passing. The *Black* court did not specifically rule on the appropriate standard of review; according to our research, no court has. The issue before the *Black* court was whether SORA and VOYRA required a finding regarding the presence or absence of sexual motivation to be made at all. Our supreme court has characterized this finding as a factual determination. See, *e.g.*, *Johnson*, 225 Ill. 2d at 582. Therefore, we see no reason to depart from the standard of review that is ordinarily used to review a trial court's factual determinations. A trial court's factual findings should be reversed only if they are against the manifest weight of the evidence. See, *e.g.*, *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 544 (2007). A finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on the evidence. *Id.*

¶ 37                          C. Sex Offender Status

¶ 38    Defendant argues that the trial court erred in finding that the offense of unlawful restraint against a child was sexually motivated. Defendant requests that this court vacate the trial court's order requiring him to register as a sex offender.

¶ 39    This remedy, even if warranted, is not complete. Per *Black*, a defendant who commits an unlawful restraint against a child *must* register under either SORA or VOYRA, depending on the trial court's determination of whether the unlawful restraint was sexually motivated. *Black*, 394 Ill. App. 3d at 942. Here, if the trial court had found, and certified in writing, that the offense was not sexually motivated, defendant would have had to register under VOYRA. In other words, we find defendant's failure to mention VOYRA misleading, because defendant seems to imply that, if the trial court erred in its finding of sexual motivation, defendant may simply walk away from his nonacquittal.

¶ 40    In any case, defendant asserts that the evidence does not support a finding that the unlawful restraint was sexually motivated where: (1) his schizophrenia and severely limited English would have prevented him from communicating a desire to have sex; and (2) he was acquitted of the sex crime, indecent solicitation, the acquittal being based on A.K.'s testimony that she could not remember whether defendant said anything of a sexual nature

-7-

to her.

¶ 41 The first argument–that defendant's schizophrenia and severely limited English made it impossible, not merely doubtful, for him to communicate a desire to have sex–is too speculative to consider. It is undisputed that defendant suffered from schizophrenia, required a Spanish translator, had difficulty during his fitness evaluation(s) answering questions in a relevant manner, and was deemed unfit to stand trial. However, the question of whether defendant nevertheless acquired a vocabulary that included the English word "sex," or would have known the English word "sex," was never before the trial court.

¶ 42 The second argument–that the unlawful restraint could not have been sexually motivated where defendant was acquitted of indecent solicitation–while interesting, also fails. The inquiry of whether a person is proved guilty beyond a reasonable doubt of indecent solicitation (which led to defendant's acquittal on that charge) is entirely different from the inquiry of whether an unlawful restraint was sexually motivated (which led to the finding that defendant was required to register as a sex offender). The former requires a finding *beyond a reasonable doubt* that, as indicted, defendant, with the intent that the offense of predatory criminal sexual assault of a child be committed, knowingly solicited A.K., a child under age 17, to perform an act of sexual penetration. 720 ILCS 5/11-6(a) (West 2008) (also including solicitation to perform an act of sexual conduct). The latter requires a factual finding that one or more of the facts underlying the offense of unlawful restraint indicate conduct that is of a sexual nature or that shows an intent to engage in behavior of a sexual nature. 20 ILCS 4026/10(e) (West 2008). That the State was unable to meet the high burden of proving the former does not preclude a court from making the factual finding that the latter, lower standard has been satisfied.

¶ 43 The question of whether one or more facts *indicated*–not proved beyond a reasonable doubt–that defendant intended to engage in conduct of a sexual nature is a relatively low bar, and we cannot say that the trial court erred in so finding. The testimony of A.K.'s father and Taylor–that A.K. told them that defendant told A.K. he wanted to have sex with her–was admitted as substantive evidence. A.K.'s statements were (purportedly) made immediately after the offense. In contrast, A.K.'s testimony that she did not remember whether defendant mentioned sex took place two years after the offense.

¶ 44 Looking at this from a policy perspective, as discussed above, prior to 2006, a nonacquittal of unlawful restraint of a child would have been enough in and of itself to automatically require a defendant to register as a sex offender. After 2006, a court must specifically find that the facts did *not* indicate a sexual motivation in order to avoid registration under SORA. See, *e.g.*, *Black*, 394 Ill. App. 3d at 942. As courts have recognized, those who kidnap or unlawfully restrain children pose a greater risk of committing sexual offenses against them. *Johnson*, 225 Ill. 2d at 588. That courts now require a finding of some "indication" that the unlawful restraint was sexually motivated does not undermine the original policy. Rather, certain fact patterns where the unlawful restraint or kidnaping evinced a complete lack of sexual motivation likely prompted the legislature to end the practice of *automatic* SORA registration. See, *e.g.*, *Johnson*, 225 Ill. 2d at 576 (the pre-2006 SORA registration was upheld where the defendant kidnapped her 20-month-old granddaughter to receive ransom); *In re Phillip C.*, 364 Ill. App. 3d at 825-26

(the pre-2006 SORA registration was upheld, even though there was no evidence that the defendant's motives were sexual in nature; the 17-year-old defendant stuck a knife in the back of another teenager, asked him if he was in a gang, and forced him to get into a car and drive). The instant case is not anything like *Johnson* or *Phillip C.*, where evidence supported a kidnaping motive of a different character–*i.e.*, monetary or gang-driven. Even setting aside the debate of whether our defendant uttered the word "sex," the evidence here more than "indicates" that he wanted A.K. for his own purposes. It would have been difficult for the trial court to certify the opposite–that there was *no* indication that defendant was motivated to engage in conduct of a sexual nature.

¶ 45                                   D. Procedural Due Process

¶ 46    Next, defendant argues that his right to procedural due process was violated in that he was deprived of liberty without a meaningful opportunity to be heard. See, *e.g.*, *Mathews v. Eldridge*, 424 U.S. 319 (1976). Procedural due process claims must address the following: (1) whether the State has interfered with a liberty or property interest; *and* (2) whether the procedures attendant to that deprivation were constitutionally sufficient. *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 272 (2004).

¶ 47    The high courts have, in some instances, avoided the question of whether registration as a sex offender implicates a liberty interest. See, *e.g.*, *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 7 (2003) (the circuit court found that it did); *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201-02 (2009) (implying that there *might* be a liberty interest at stake by stating that the liberty interests of a juvenile who is required to register as a sex offender, if any, are not as great as those of an adult who is required to register as a sex offender). These courts have skipped right to the second prong, finding that, regardless of whether registration implicated a liberty interest, the defendant had a meaningful opportunity to be heard. We recognize that, *prior* to *Connecticut* and *Konetski*, the Second District held that registration under SORA does *not* deprive the registrant of a protected liberty interest. *People v. Malchow*, 306 Ill. App. 3d 665, 672 (1999); *People v. Logan*, 302 Ill. App. 3d 319, 322 (1998). We reasoned that SORA merely compiles truthful, public information. *Malchow*, 306 Ill. App. 3d at 672; *Logan*, 302 Ill. App. 3d at 322. However, we do acknowledge that a registrant will certainly face, at least in a colloquial sense, some form of embarrassment or stigma, as well as some actual restrictions (involving where he can live and where he can work). Therefore, given the higher courts' apparent reluctance to firmly state that registration as a sex offender does *not* implicate a liberty interest, we follow their lead and resolve this issue on the second prong.

¶ 48    Even if registration under SORA implicates a liberty interest, defendant cannot show that he was denied a meaningful opportunity to be heard. A defendant is not denied due process where he or she is afforded a procedurally safeguarded opportunity to contest the ruling that triggered the imposition of the sex offender status (here, the nonacquittal of the unlawful restraint). *Connecticut*, 538 U.S. at 7. Defendant concedes this point. However, defendant argues that his situation is distinguishable from that in *Connecticut* because, in *Connecticut*, the defendant was convicted at trial, whereas, here, defendant received a judgment of

nonacquittal at a discharge hearing. *Id.* We fail to see how this difference matters, especially where statute allows for it. See 730 ILCS 150/2(A)(1)(d) (West 2008); *People v. Olsson*, 2011 IL App (2d) 091351, ¶ 6.

¶ 49      Essentially, defendant's entire argument on this point is that the process rights afforded at a criminal trial are *different* from those afforded at a discharge hearing. Admittedly, discharge hearings under section 104-25 do not afford the same procedural rights as criminal proceedings. *People v. Waid*, 221 Ill. 2d 464, 470 (2006). Because the question at a discharge hearing is whether to acquit the defendant (*i.e.*, the defendant cannot be found "guilty"), the discharge hearing is closer to a civil proceeding (even though section 104-25 is part of the Code of Criminal Procedure). *Id.* Therefore, a discharge hearing does not provide all of the procedural protections typically offered in a criminal proceeding, such as the right to confrontation. *Id.* at 480 (allowing reliable hearsay evidence).

¶ 50      In our view, by refusing to extend the procedural rights offered at a criminal trial to a discharge hearing, our supreme court in *Waid* implicitly upheld the sufficiency of the procedural rights offered at a discharge hearing. *Id.* Due process is a flexible concept and not all situations call for the same procedural safeguards. *Konetski*, 233 Ill. 2d at 201. The process rights afforded at a discharge hearing are set forth by statute (725 ILCS 5/104-25 (West 2008)), and defendant does not explain how these procedures are unconstitutional. See *Konetski*, 233 Ill. 2d at 200 (statutory enactments are presumed constitutional). The fundamental requirements of due process are notice of the proceeding and an opportunity to present any objections. *Id.* Defendant had this. Defendant had an appointed attorney who was able to cross-examine the State's witnesses. As at a criminal trial, defendant was afforded the additional constitutional safeguards of the right to notice, the privilege against self-incrimination, and the standard of proof beyond a reasonable doubt. See *id.* at 201-02 (listing several procedural safeguards afforded in juvenile proceedings).

¶ 51      Therefore, we reject defendant's procedural due process argument.

¶ 52                         III. CONCLUSION

¶ 53      For the aforementioned reasons, the trial court's judgment is affirmed.

¶ 54      Affirmed.